UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 11 CIV. 0846

Frederick W. GUNDLACH

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

International Business
Machines, Inc., IBM Japan
Ltd., and John Doe(s)

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)*

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  X Yes  ☐ No
*(check one)*

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

X
Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
**NOTE:** *In order to bring suit in federal district court under Title VII, you must first obtain a
Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

X
Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
**NOTE:** *In order to bring suit in federal district court under the Age Discrimination in
Employment Act, you must first file a charge with the Equal Employment Opportunity
Commission.*

_____
Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act,
you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

_____
New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

_____
New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

RECEIVED

PRO SE OFFICE

*( See supplemental sheet for additional claims.)*

## I.   Parties in this complaint:

**A.**   List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name __Frederick W. Gundlach__
             Street Address __143 Hawthorne Drive__
             County, City __Lancaster County, Denver Borough__
             State & Zip Code __Pennsylvania 17517__
             Telephone Number _____

**B.**   List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant    Name __International Business Machines, Inc.__
             Street Address __New Orchard Road__
             County, City __Westchester County, Armonk__
             State & Zip Code __New York 10501__
             Telephone Number __(914) 499-4210__

**C.**   The address at which I sought employment or was employed by the defendant(s) is:

             Employer __Cognos K.K. and IBM Japan, Ltd.__
             Street Address __Shinjuku First West Bldg, 9th Floor__
             County, City __Shinjuku-ku, Tokyo__
             State & Zip Code __Tokyo-to JAPAN 169-8701__
             Telephone Number _____

## II.   Statement of Claim:

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A. The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

- _____    Failure to hire me.
- __X__    Termination of my employment.
- _____    Failure to promote me.
- _____    Failure to accommodate my disability.
- __X__    Unequal terms and conditions of my employment.

_____   Retaliation.

_____   Other acts *(specify)*: _____.

**Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.   It is my best recollection that the alleged discriminatory acts occurred on: <u>beginning April 22, 2008</u>
                                                                              *(Date(s))*

C.   I believe that defendant(s) *(check one)*:

_____   is still committing these acts against me.

__X__   is not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

☐ race _____        ☐ color _____

☐ gender/sex _____        ☐ religion _____

☒ national origin <u>American</u>

☒ age.   My date of birth is <u>Jan. 12, 1965</u>   *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☐ disability or perceived disability, _____   *(specify)*

E.   The facts of my case are as follow *(attach additional sheets as necessary)*:

In addition to matters of U.S. civil rights law, this action also concerns questions of foreign labor law (Japan), and parties are hereby notified. (FRCP 44.1)

1. International Business Machines does business in Japan through an affiliate (cont'd on separate sheet)

**Note:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.   Exhaustion of Federal Administrative Remedies:

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: <u>October 8, 2008; notarized Nov. 14, 2008</u>   *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one):*

_____    has not issued a Notice of Right to Sue letter.

___X___    issued a Notice of Right to Sue letter, which I received on **Nov. 11, 2010** *(Date).*

> **Note:** *Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one):*

___X___    60 days or more have elapsed.

_____    less than 60 days have elapsed.

# IV.    Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: 1,000,000 Japanese yen per month, from 2/1/09; ¥3,525,081 unpaid overtime; reinstatement in position of employment or equivalent position; front pay and additional $200,000 for tort; *(Describe relief sought, including amount of damages, if any, and the basis for such relief.)* airfare and moving expenses.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 4th day of February, 20 11.

Signature of Plaintiff _Fredrick J. Mundlach_

Address    143 Hawthorne Drive
Denver, Pennsylvania
17517

Telephone Number    717-335-2429

Fax Number *(if you have one)* _____

**<u>SUPPLEMENTAL SHEET</u>**

**Additional claims brought in this action:**

**1. Breach of contract**

**2. Violations of Japanese Labor Law**

**3. Tortious interference with contractual relations**

**I.  Additional parties in this complaint**

1.  <u>IBM Japan, Ltd.,</u> 19-21 Nihonbashi Hakozaki-cho, Chuo-ku, Tokyo JAPAN 103-8510

2.  <u>Cognos K.K.</u>, formerly at Shinjuku First West Building, 1-23-7 Nishi Shinjuku, Shinjuku-ku, Tokyo JAPAN  160-0023, may have merged into IBM Japan.

3.  John Doe or Does, employees of IBM Japan, addresses unknown.

**II.  Statement of Claim**

Section E, continued.  (Facts pled to **employment discrimination**, which also include some concerning breach of contract, tort, and violation of Japanese labor law):

1.  [International Business Machines does business in Japan thorough an affiliate], IBM Japan, Ltd. ("IBM Japan"), which is a 100% wholly-owed subsidiary of defendant International Business Machines ("IBM USA" or "IBM").

2.  Although IBM Japan is a separate stock company with its own board, determined by IBM USA, IBM Japan and IBM USA have common ownership and financial control by the management and shareholders of IBM USA.   IBM Japan is not a joint venture company.

3.  IBM Japan has, as its main purpose of doing business in Japan, the sale of IBM USA services and products.   The operations of IBM Japan are interrelated with the operations of IBM USA.

4. There is centralized control of labor relations between IBM Japan and IBM USA, and among the various other IBM USA affiliates throughout the world.   IBM Japan only sets employment policies that are consistent with standards developed and approved by IBM USA, although IBM Japan is also bound by Japanese labor and contract law.

5. There is common management between IBM Japan and IBM USA.   Samuel J. Palmisano serves as chairman and chief executive office of IBM USA, and the management of IBM Japan are ultimately responsible to Mr. Palmisano, even if through other managers.

6. The management of IBM Japan is often recruited from the ranks of IBM USA, and IBM Japan corporate board members serve at the discretion of management approved by IBM USA.   IBM Japan management ultimately reports to a named executive employed by IBM USA.

7. IBM purports to be fully-integrated company where corporate policies are set on a global basis.

8. Any of the interrelation of operations, the common management, the centralized control of labor relations; and the common ownership or financial control of IBM Japan and IBM USA, make IBM Japan a subsidiary that is controlled IBM USA. It is not an unrelated company, and decisions made in Japan are in furtherance of objectives set by IBM USA.

9. IBM USA, through its affiliates, finalized a purchase of Cognos, Inc. (Canada) on February 1, 2008.

10. Plaintiff was employed by Cognos, K.K. (*kabushiki kaisha* or limited liability company), beginning February 25, 2008, in the role of Financial Consultant to a superior Financial Controller, Miki Ishikawa.  The salary was set at 1,000,000 yen per month, paid monthly.

11. A written contract, in English, attached to the Financial Consultant position. However, the contract contained irregularities and flaws under Japanese labor and contract law, such that the contract may not be valid.

12. Plaintiff was not aware of the irregularities in the February 25, 2008 contract. Cognos K.K. should have been aware as it had done business in Japan for 20 years and had superior knowledge.

13. Cognos K.K. did not have a valid representative director (*daihyou torishimari yaku*) at the time of the contract signing.

14. The contract lacked certain specificities required under Japanese Labor Law. In particular, a detailed description of employment duties was entirely absent from the document.

15. The contract was not honored in its terms by Cognos K.K. In particular, overtime was provided both under the contract and under Japanese Labor Law, which plaintiff was never compensated for by Cognos K.K, although plaintiff worked in excess of 40 hours per week.

16. Regardless of the inherent flaws in the February 25, 2008 employment contract, plaintiff's role under the contract ended on March 7, 2008, when Miki Ishikawa was given notice of termination by officers of Cognos Party, Ltd., operating in Sydney, Australia.

17. Plaintiff was offered and accepted the position of Financial Controller of Cognos K.K. on March 7, 2008.

18. The role of Financial Controller did not come with a written contract. To memorialize the change in employment duties and status, specific terms were deleted from the February 25th contract. The monthly salary remained the same; the exchange was for "regular" or what is also called permanent employment in Japan.

19. There is no "at will" employment in Japan, and an employment relationship need not be evidenced by a writing. Whether there is a writing attached to a position is not relevant to the status of an employee.

20. Because there is no "at will" employment in Japan, an employee acquires rights in a job at the time he or she is hired in the role.

21. There is no so-called "white collar exemption" under Japanese Labor Law, (referring to the U.S. Fair Labor Standards Act).

22. Plaintiff continued to provide overtime to Cognos K.K. (work in excess of 40 hours) throughout March 2008 and April 2008, and provided details as had been required by management in Australia.

23. Unknown to Plaintiff at the time of hire, IBM USA management intended that the employees of Cognos K.K. be transferred to IBM Japan later in 2008. IBM set the "transfer of employees" date as May 1, 2008.

24. Although Plaintiff negotiated an employment relationship with the officers of Cognos Party, Ltd., who were in control of Cognos K.K. in the absence of a valid representative director, the management of IBM Japan did not recognize these developments at the time.

3

25. The management of IBM Japan, and in particular a John Doe or John Does, insisted that Plaintiff not be transferred to IBM Japan.  No explanation was given, and the circumstances of the arrangement strongly indicate that plaintiff did not receive a transfer due to plaintiff's national origin (American).

26. The referenced John Doe or Does interfered with plaintiff's employment relationship with Cognos K.K. by claiming that plaintiff could not continue to be paid by Cognos K.K. and deciding that plaintiff would have to accept a separate IBM Japan contract.

27. Plaintiff was notified that he was not on the transfer or employees list, and directed to refer questions to Australian Cognos management, a separate treatment that remains unclear to the present

28. An IBM Japan representative notified plaintiff that he would not be on the IBM payroll unless he accepted IBM's written contract of employment, which did not honor the terms of the Cognos employment.  Cognos payroll was to be shut down.

29. IBM Japan's threat to cause a breach of plaintiff's employment agreement with Cognos K.K. was meant as an inducement for plaintiff to accept unequal terms and conditions as were offered to the remaining Cognos employees, the overwhelming number of whom were Japanese.

30. All other transferees from Cognos K.K. to IBM Japan were given the same terms of employment, consistent with Japanese Labor Law. (An employee cannot be transferred to an affiliate company to disadvantage the employee.)

31. Cognos K.K. finally hired a local president, Kazuo Hosoi, who became the representative director of Cognos sometime around April 29, 2008.

32. In late April 2008, IBM Japan presented plaintiff with a term-limited IBM Japan contract, with the direction to sign the contract.

33. Plaintiff signed the IBM Japan contract on April 22, 2008.

34. Plaintiff continued to perform the same work for Cognos K.K., although now purportedly being paid by virtue of the IBM Japan contract, not the March 7 employment agreement.

35. The contract drafted by IBM Japan contained an end date of January 31, 2009. This would mean that IBM might not honor the employment contract Cognos and plaintiff had agreed to March 7, 2008.

36. No consideration was offered for the above-mentioned change.

4

37. Plaintiff was not transferred to IBM Japan along with the other Cognos regular employees, who were almost exclusively Japanese, and instead, purportedly worked under a separate IBM Japan contract.

38. Cognos K.K.'s relationship to plaintiff did not change with the IBM Japan contract. No term of the contract absolved Cognos K.K. of its employer duties to plaintiff, as this would be against Japanese Labor Law.

39. Around May 3, 2008 plaintiff notified both Australian management and Representative Director Kazuo Hosoi of the above issues. No relief was given.

40. Plaintiff continued to perform the role of Financial Controller throughout 2008. IBM made some changes to the role, and added other responsibilities, but the major functions remained the same.

41. Plaintiff continued to submit timesheet reports to IBM Japan management for overtime outside the stated 37.6 hours a week of work in the position.

42. In the beginning of October 2008, plaintiff notified both the Human Resources Department of IBM Japan and of IBM USA of plaintiff's concerns regarding the above-described matters, and did not receive a response.

43. On October 8, 2008, Plaintiff notified the New York district office of the Equal Employment Opportunity Commission (EEOC), via the online administrative charge processing website, of possible national origin and/or age discrimination in the above-described events.

44. Around November 14, 2008, a certification was filed in furtherance of the above administrative charge.

45. IBM Japan, through Kazuo Hosoi, gave plaintiff an annual review in December 2008 which was not consistent with the duties and powers of plaintiff's employment as it had been modified by IBM Japan. In particular, IBM Japan had refused to pay certain Cognos product representatives, and plaintiff did not have authority to approve a separate payment to them, because a payroll approval function had been "migrated" from Cognos K.K.

46. Sometime before January 31, 2009, plaintiff was notified that IBM Japan was adhering to the end date the IBM management had written into the IBM employment contract.

47. Plaintiff was asked for the passcard to the office and other company identification, which, as IBM property, was tendered on request.

48. At that time, plaintiff's work was divided and given to employees, one or all of whom were at least 10 years younger than plaintiff.

5

49. On Monday, February 2, 2009, plaintiff submitted *shurou seikyuu*, or a demand for work, to Shigenori Watanabe (possible John Doe) and Carl Hahn, Esq., of IBM Japan.

50. After three months, IBM USA responded to the EEOC administrative charge in late February 2009, claiming that IBM Japan was an entirely unrelated company to IBM USA, and declining to provide any information about the above matters.

51. Plaintiff responded to IBM USA's February 2009 submission, in a rebuttal dated March 4, 2009.

52. In May 2010, Charles Diamond of the New York EEOC district office notified plaintiff that he would seek a substantive response from IBM USA to the administrative charge.

53. IBM USA, through Julie London, inevitably responded to the administrative charge around September 13, 2010, (22 months after the original notice), reasserting IBM USA's initial defense, and adding that its position was that there was no employment discrimination because it maintained there were two valid contracts where both Cognos and IBM Japan had fully performed.   IBM again ignored the matters presented above.

54. IBM may have further asserted to the EEOC that the above matters had been a misunderstanding and not intentional discrimination against an American national working in Japan.   The claim was that the Australian management did not understand Japanese labor and contract law; and the Japanese believed plaintiff to be an employee under contract, not a regular (or permanent) employee.

55. The EEOC notified plaintiff by mail to Japan on November 11, 2010 that it declined to continue to pursue the administrative charge due to a change in priorities of outstanding charges at the district office; and further, because it was possible that the companies' actions were the product of mistake and/or misunderstanding, not discrimination.

56. On November 12, 2010, plaintiff contacted Julie London of IBM USA to discuss the matters of breach of contract and failure to pay overtime, which were separate from the civil rights claim.   No response to that e-mail, two phone calls, nor subsequent e-mails has been received.

57. IBM USA's refusal to respond to federal government administrative processes from November 2008 to September 2010 made it impossible for plaintiff to obtain any separate resolution in the Japanese legal system for violations of Japanese Labor Law, breach of contract, and the like.

58. The facts of a civil rights claim in this matter are inextricably bound to similar claims of breach of contract, tort, and labor law violations.

59. Any use of the Japanese legal system would have created a situation of issue preclusion and claim preclusion, which would have impeded the remedies available to the EEOC before it issued a notice letter.

60. Plaintiff's permission to work in Japan expired on November 17, 2010, and plaintiff returned to America on December 20, 2010.

Plaintiff now brings the above action for violations of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act.    In addition, there is joinder of claims of breach of contract, violations of Japanese Labor Law, and tortious interference with contractual relations, and, which are set forth below:

## Breach of Contract    (facts specific to breach of contract)

1    Employment relations in Japan are generally classified in two kinds of employment.

2    One type of employment relation is *kikan no sadame no ari*, "with a fixed time period", known casually as *keiyaku sha'in* or contract employee.

3    The second type of employment is *kikan no sadame no nai*, or "without a fixed time period".    This is known as *sei sha'in*, a regular or permanent employee.

4    Labor relations in Japan are governed by the 1947 Labor Standards Act, as amended.    It is a national law.

5    Fixed-term, written contracts are permitted under the Labor Contract Act, effective March 1, 2008.

6    There is no "at will" employment in Japan, and the employee acquires rights in a job, similar to contract employment in an "at will" jurisdiction in America.

7    Where a written employment contract fails in Japan, the Labor Standards Law applies.

8    The elements of an employment agreement in Japan are that an employer offers employment, and the employee accepts employment.

9    Termination of an employment arrangement can only be done in a manner that is recognized by Japanese law.

Additionally:

10  A liability of Cognos K.K. for breach of contract would carry to IBM Japan, since all the employees and business activity, assets and liabilities of Cognos K.K. were transferred to IBM Japan.

11  There is a possibility that Cognos K.K. was merged into IBM Japan sometime after January 31, 2009, and therefore no longer exists as a separate corporation.

12  A liability of Cognos K.K. for breach of contract would carry to IBM Japan, since all the employees and business activity, assets and liabilities of Cognos K.K. were transferred to IBM Japan.

13  A U.S. district court judge, pursuant to Federal Rule of Civil Procedure, Rule 44.1, determines matters of foreign law as questions of law, and not questions of fact.

**Five assertions why the February 25/26, 2008 Cognos K.K. contract was not a valid contract under Japanese Labor Contract Law**

Assertion One:

**a)  The contract, under the Labor Standards Law, is void for vagueness.**

8.  The Japanese Labor Standards Law, Article 15, requires that all labor contracts provide a detailed, written description of the "contents of duties" of a position.

9.  The February 25th contract merely stated, do "accounting work."

10. An overbroad description in the February 25th contract is not a detailed description.

11. The February 25th contract is void for vagueness under Japanese Labor Law.

Assertion Two:

**b)  The February 25th contract ended when Ms. Miki Ishikawa was given notice of termination in her role as Financial Manager (a/k/a Financial Controller) of Cognos K.K., and plaintiff was appointed to the position as controller.**

12. Plaintiff and Cognos K.K., respectively, agreed to be employed in, and to have as employed in, one position.

13. On February 25th, it was impossible for plaintiff to have agreed to be employed as financial controller, when Miki Ishikawa was at the time financial controller under regular employment.

14. When plaintiff was offered, and accepted, the role of Financial Controller of Cognos K.K., the February 25th contract came to an end.

15. As evidenced by Ms. Ishikawa's subsequent settlement letter, dated April 15, Ms. Ishikawa was removed from the duties of controller of Cognos on Friday, March 7, 2008.

16. Since Ms. Ishikawa legally held a job with Cognos on February 25, 2008, held the role of controller, and had the related duties and responsibilities, there is simply no way that my contract with Cognos could have equally encompassed those same duties on that date.

17. When the February 25th contract became no longer valid, plaintiff irrefutably obtained regular or permanent employment status within Cognos K.K.


Assertion Three:

   c) **At the time of the initial signing (February 25/26), Cognos K.K. did not have a valid Representative Director, and so therefore did not have the capacity to contract, even if it had the capacity to hire.**

18. The February 25th contract contains the name of Mr. Rohan Persaud, whom Cognos Party, Limited, in Australia claimed was the representative director of Cognos, K.K.

19. A valid representative director of a Japanese corporation (K.K., "kabushiki kaisha" or 株式会社 ) is someone who *actually* resides in Japan.

20. A former residence or a mail drop does not suffice to create residency in Japan.

21. Rohan Persaud had left Japan some months before the February 25, 2008 contract was executed.

22. Mr. Persaud was not on the Cognos K.K. payroll in 2008.

23. The Cognos K.K. officials, as well as those at IBM when it acquired Cognos on February 1, 2008, pretended that the unit continued to have a valid representative director up to the time that Kazuo Hosoi was hired and appointed representative director.

24. Rohan Persaud did not have national taxes filed for him by Cognos in 2008.

25. Rohan Persaud did not pay Japanese residence tax for 2007 on his income due to his alleged use of an apartment in Tokyo (during 2008) that is listed on the corporation records filed with Shinjuku Ward.

26. A company without a valid representative director cannot do business in Japan.

27. A contract executed by a company without a valid representative director is void.


Assertion Four:

   d) **The Cognos contract is a sham because compensation was never made for overtime work in the period.**

28. To date, Cognos K.K. has not paid for authentically worked and properly reported time in excess of the 40-hour-per-week limit agreed to in the contract.

29. Japanese Labor and Health Ministry Guidelines state that, "in the event an employer decides not to pay extra wages for overtime, the labor contract shall be cancelled as a breach of Article 37, Labor Standards Law."

Assertion Five:

   e) **The February 25, 2008 contract became legally one of a regular employment relationship after July 11, 2008.**


30. In the alternative to the above, if the February 25th contract were valid, it would have continued through July 11, 2008, and plaintiff's employment relation to Cognos K.K. would have been one of regular employment or "sei sha'in."

31. If the standard were simply "be assigned" (and do) "accounting work" for Cognos K.K., and that description were acceptable for Japanese Labor Standards Law, then this was performed well past the July 11 "initial period" stated in the contract.

32. There is no written documentation to show that the February 25th contract was ever ended.

33. IBM has argued that a unilateral modification of a contract would not be valid.

34. A bilateral modification of a contract, *improperly obtained,* would not be valid.

35. There is no fact to show that Plaintiff's employment relation to Cognos K.K. did not continue after July 11th 2008.

**Failure of the April 17/22, 2008 contract ("IBM contract" or "IBM Japan contract") to be a valid contract under Japanese Labor Contract Law and invalid under Japanese Labor Standards Law.**

Assertion One:

   a) **The IBM contract was obtained by employer "abuse of power".**

   36. A labor contract in Japan binds *both* the employer *and* the employee.

   37. An employer cannot easily avoid a term-limited contract, but also the **employee** cannot leave before the end of term of a contract *without being liable to the employer for damages.*

   38. Had plaintiff quit Cognos K.K., on May 1, 2008, or any time before, instead of signing the IBM document, Cognos K.K. may have asserted a claim against plaintiff for any damage it incurred for my failure to perform for Cognos in the period to July 11, 2008.   (This is assuming a theory of a valid original contract.)

   39. Plaintiff did not have my freedom to contract against Cognos' interests for the time period May 1 to July 11, 2008.

   40. Besides not being in an equal position as required by the Japanese Labor *Contract* Law (2008), Article 3, to execute a valid labor contract, the contract as provided by IBM Japan required me to continue to offer my labor to IBM Japan through January 31, 2009.   (Meaning, plaintiff could not offer plaintiff's labor to another company.)

   41. Had the second document been executed on July 11, 2008, then IBM USA might have had an argument that the second contract succeeded the first.

   42. The original Cognos K.K. contract, as written, and the IBM contract overlap in time periods.

   43. As IBM asserted to the EEOC, both the February 25th contract and the IBM contract were valid contracts, plaintiff could be held to the first one regardless; plaintiff therefore had no choice to sign the second.

   44. The IBM Japan contract was not properly obtained.   It is not supported by fresh consideration, and would be invalid under Japanese Labor Law and Japanese Labor Contract Law.

45. Since the IBM contract was obtained by employer "abuse of power", as described in Japanese labor law, and was otherwise improperly obtained, the March 7, 2008 *sei sha'in* (regular employment) status continues to the present.

Assertion Two:

b) **The IBM contract did not supersede the original Cognos contract. Both contracts continued as separate agreements, and the Cognos contract inevitably created a "sei sha'in" relationship.**

46. The IBM Japan contract did not supersede the original Cognos contract.

47. The IBM Japan contract, which was drafted by a representative of IBM Japan, did not contain language indicating that it superseded any other contract.

48. IBM Japan and Cognos K.K. were separate companies at the time.

49. IBM asserted to the EEOC that 100% wholly-owned subsidiaries of IBM USA are not responsible, and otherwise have no control over, the decisions made in separate corporations within the IBM group of companies.

50. Since the IBM contract did not supersede the Cognos K.K. contract, and was improperly obtained, the March 7, 2008 *sei sha'in* (regular employment) status continues to the present.

Assertion Three:

c) **IBM contract is a sham because overtime was never paid in full for work beyond the hours in the contract.**

51. To date, IBM Japan has not paid, in full, for authentically worked and properly reported time in excess of the 37.6 -hour-per-week limit agreed to in the contract.

52. Japanese Labor and Health Ministry Guidelines state that, "in the event an employer decides not to pay extra wages for overtime, the labor contract shall be cancelled as a breach of Article 37, Labor Standards Law."

53. Plaintiff demanded overtime payment in the amount of 3,500,000 yen, as recently as March 31, 2010.

54. Plaintiff could not bring the overtime matter to a Japanese court because of concerns of issue preclusion and claim preclusion, which would have inhibited the ongoing EEOC investigation.

**Violations of Japanese Labor Law**

55. Federal Rule of Civil Procedure, Rule 44.1, states that, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law."

56. The failure of Cognos K.K. to provide an adequate written contract on the original hire date of February 25, 2008 was a violation of Japanese Labor Standards Law.

57. The failure of IBM Japan to acknowledge plaintiff's *sei sha'in* status (regular employment status) within Cognos K.K., effective at the latest March 7, 2008, was a violation of Japanese Labor Standards Law.

58. The presentation of a separate employment contract by IBM Japan, meant to deny or undermine plaintiff's regular employment status within Cognos K.K., was a violation of Japanese Labor Standards Law.

59. Cognos K.K. and IBM Japan's failure to pay overtime, which ironically was provided for by the terms of the defendants' drafted contracts as well as by Japanese Labor Standards Law, was a violation of Japanese Labor Standards Law.

60. Denying plaintiff a reinstatement in the employment position or its equivalent, in Japan, is a continuing violation of Japanese Labor Standards Law.

**Tortious interference with contractual relations**

61. As pled above, plaintiff had a regular employment, contractual relation between himself and Cognos K.K., effective March 7, 2008.

62. Certain members of IBM Japan management, identified herein as a John Doe or several John Does had knowledge of plaintiff's contractual relationship.

63. Through actions intended to deprive plaintiff of his regular employment relation with Cognos K.K., at least one John Doe took unprivileged actions to deprive plaintiff of a transfer of employment to IBM Japan.

64. The actions taken by at least one John Doe were calculated to cause plaintiff to lose plaintiff's employment relation with Cognos K.K., which, as pled, was regular employment.

65. As IBM Japan is an entirely separate corporation, organized under the Japan corporation code, the John Doe or Does who sought to deny plaintiff his rights under Japanese labor law did not have the authority, and cannot claim a legal

privilege, for their actions as they affected plaintiff's relations to Cognos K.K., which was a separate Japanese corporation.

66. Cognos K.K. ceased to allow plaintiff to perform as an employee, at the latest, on January 31, 2009.

67. Plaintiff made a formal demand for work on the next business day, February 2, 2009.

68. The denial of work to plaintiff constituted a breach of plaintiff's employment relation with Cognos K.K.

69. This breach caused the specific pled damage to the plaintiff of a monthly salary for each month that Cognos K.K., or its later successor IBM Japan has refused plaintiff work, and other damage specific to the harm caused to plaintiff by being denied work by IBM.

**<u>EEOC NOTICE OF SUIT RIGHTS</u>**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

0040BS0001

FIRST CLASS



UNITED STATES POSTAGE
PITNEY BOWES
02 1A
0004601382
$ 00.44°
NOV 04 2010
MAILED FROM ZIP CODE 10004

Frederick W. Gundlach
Tomigaya 1-32-23 Apt 3B
Shibuya-Ku, Tokyo,
151-0063 Japan

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

| To: | Frederick W. Gundlach<br>Tomigaya 1-32-23 Apt 3b<br>Shibuya-Ku<br>Tokyo, 1510063 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 520-2009-00116 | Charles K. Diamond,<br>Investigator | | (212) 336-3771 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Elizabeth Grossman,
Acting District Director

11/03/2010
(Date Mailed)

Enclosures(s)

cc: **IBM CORPORATION**
Human Resources Director
New Orchard Road
Armonk, NY 10504