ALLAN S. BLOOM
ERIN E. LARUFFA
PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendants*
INTERNATIONAL BUSINESS MACHINES CORPORATION
and IBM JAPAN, LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREDERICK W. GUNDLACH, | No. 11 CV 0846 (CS) (PED) |
| Plaintiff, | |
| - against - | |
| INTERNATIONAL BUSINESS MACHINES INC., IBM JAPAN LTD, COGNOS K.K., and JOHN DOE(S), | |
| Defendants. | |


**DEFENDANT IBM JAPAN LTD'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLAIMS AGAINST IT**

**TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................... 1

III.   THE COURT LACKS PERSONAL JURISDICTION OVER IBM JAPAN .................. 2

    A.    IBM Japan Is A Separate Entity........................................................... 3

    B.    General Personal Jurisdiction Does Not Exist Over IBM Japan ........................... 3

    C.    Specific Personal Jurisdiction Does Not Exist Over IBM Japan.......................... 5

        1.    IBM Japan does not and has not transacted business within New York or contracted to supply goods or services in New York .......... 5

        2.    No tortious act within New York is at issue in this case .......................... 6

        3.    No tortious act occurred outside of New York that caused injury in New York.................................................................................. 6

        4.    IBM Japan does not own property in New York ...................................... 7

    D.    Plaintiff's Theories Of Jurisdiction Also Fail ........................................ 7

        1.    Plaintiff's "mere department" and "agency" theories fail ......................... 7

            a.    Plaintiff's "mere department" theory is without merit ................. 8

                (i)    Mere department "financial dependency" factor .............. 9

                (ii)   Mere department "corporate formalities" factor.............. 10

                (iii)  Mere department "control over marketing and operational policies" factor............................................. 11

            b.    Plaintiff's "agency" theory is without merit ................................ 12

        2.    The Alien Venue Act does not confer jurisdiction over IBM Japan........ 13

        3.    Plaintiff's "supplemental jurisdiction" theory fails because supplemental jurisdiction can only confer subject matter jurisdiction, not personal jurisdiction over a party .................................. 14

        4.    FRCP 4(k)(2) does not confer jurisdiction over IBM Japan.................... 15

            a.    Plaintiff's claims against IBM Japan do not arise under federal law.................................................................................. 16

    E.    Exercise Of Personal Jurisdiction In This Case Would Offend Due Process...... 16

        1.    IBM Japan does not maintain sufficient contacts with New York or the United States ................................................................. 17

        2.    Exercise of jurisdiction is not reasonable in this case............................ 18

**TABLE OF CONTENTS**
(continued)

Page(s)

IV. THE AMENDED COMPLAINT FAILS TO MEET THE PLEADING STANDARDS OF *TWOMBLY* AND *IQBAL* ................................................................ 19

    A. *Twombly* And *Iqbal* Standard .............................................................. 19

    B. Plaintiff's Breach Of Contract Claim Is Not Plausible On Its Face ................... 19

    C. Plaintiff's Japanese Labor Law Claim Is Not Plausible On Its Face .................. 20

V. THE COMPLAINT SHOULD BE DISMISSED ON THE GROUND OF *FORUM NON CONVENIENS* ............................................................................ 21

VI. IBM JAPAN HAS NOT BEEN PROPERLY SERVED UNDER THE HAGUE CONVENTION ..................................................................................... 23

VII. CONCLUSION ............................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Action Embroidery Corp. v. Atlantic Emroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) .................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. ---, 129 S. Ct. 1937 (2009).................................................1, 19

*Baptichon v. Nevada State Bank*,
    304 F. Supp. 2d 451 (E.D.N.Y. 2004), *aff'd,* 125 F. App'x 374 (2d Cir. 2005).....................14

*BBC Chartering and Logistics, GmbH*,
    No. 08 Civ. 200 (WHP), 2009 WL 259618 (S.D.N.Y. Feb. 4, 2009)....................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................1, 19

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)..........................................................5, 17

*Carey v. Bayerische Hypo-Und Vereinsbank, AG*,
    370 F.3d 234 (2d Cir. 2004)................................................................22

*Casio Computer Co. v. Sayo*,
    98 Civ. 3772 (WK) (RLE), 1999 U.S. Dist. LEXIS 14675
    (S.D.N.Y. Sept. 20, 1999), *adopted by*, 2000 U.S. Dist. LEXIS 15411 (S.D.N.Y. Oct.
    13, 2000) ...............................................................................23, 24

*Charas v. Sand Tech. Sys. Int'l Inc.*,
    No. 90-5638 (JFK), 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) ...........................24

*Doppelt v. Perini Corp.*,
    No. 01-4398 (LMM), 2002 WL 392289 (S.D.N.Y. Mar. 13, 2002), *aff'd*, 53 F. App'x
    174 (2d Cir. 2002)........................................................................14

*Fitzgibbon v. Sanyo Sec. Am., Inc.*,
    92-CV-2818 (RPP), 1994 U.S. Dist. LEXIS 8386 (S.D.N.Y. June 22, 1994) .................23, 24

*Freeman v. Gordon & Breach*,
    398 F. Supp. 519 (S.D.N.Y. 1975)......................................................8, 9

*IUE AFL-CIO Pension Fund v. Herrmann*,
    9 F.3d 1049 (2d Cir. 1993), *cert. denied*, 513 U.S. 822 (1994).............................16

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998)...........................................................11, 12

*Jerge v. Potter*,
    No. 99-CV-312 (FE), 2000 WL 1160459 (W.D.N.Y. Aug. 11, 2000).......................10, 11, 12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kendrick v. Greenburgh Housing Auth.*,
   No. 07-CV-5859 (CS), 2011 WL 1118664 (S.D.N.Y. Mar. 22, 2011) ...................................15

*La Chance v. Drug Enforcement Admin.*,
   672 F. Supp. 76 (E.D.N.Y. 1987) ...........................................................................................14

*M&M Packaging, Inc. v. Kole*,
   No. 04-CV-9532 (CLB), 2005 WL 6319489 (S.D.N.Y. July 27, 2005), *aff'd*, 183 F.
   App'x 112 (2d Cir. 2006) ...........................................................................................................7

*Mareno v. Rowe*,
   910 F.2d 1043 (2d Cir. 1990), *cert. denied*, 498 U.S. 1028 (1991)..................................3, 4, 7

*Mende v. Milestone Tech., Inc.*,
   269 F. Supp. 2d 246 (S.D.N.Y. 2003).....................................................................................23

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996)...........................................18

*Murray v. BBC*,
   81 F.3d 287 (2d Cir. 1996)................................................................................................21, 22

*Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*,
   484 U.S. 97 (1987).....................................................................................................................23

*Porina v. Marward Shipping Co., Ltd.*,
   521 F.3d 122 (2d Cir. 2008)..........................................................................................15, 16, 17

*Salamea v. Macy's East, Inc.*,
   426 F. Supp. 2d 149 (S.D.N.Y. 2006).......................................................................................2

*Schenker v. Assicurazioni Generali S.P.A.*,
   No. 98-CV-9186 (MBM), 2002 WL 1560788 (S.D.N.Y. July 15, 2002) ......................4, 5, 13

*Tamam v. Fransabank Sal*,
   677 F. Supp. 2d 720 (S.D.N.Y. 2010).................................................................................15, 18

*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*,
   110 F.3d 861 (2d Cir. 1997)......................................................................................................14

*Volkswagenwerk Aktiengesell-Schaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984)...........................................................................................8, 9, 10, 11

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001)...............................................................................................2, 6, 16

*Wickers Sportswear, Inc. v. Gentry Mills, Inc.*,
   411 F. Supp. 2d 202 (E.D.N.Y. 2006) .......................................................................................4

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000), *cert. denied*, 532 U.S. 941 (2001)...............................................13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

STATUTES

28 U.S.C. § 1391...................................................................................................................13

## I.      INTRODUCTION

Plaintiff Frederick W. Gundlach worked for defendant IBM Japan Ltd. ("IBM Japan") for less than a year, exclusively in Japan.  IBM Japan is incorporated in Japan and does business only in Japan.  All of the employment-related decisions Plaintiff complains about in this lawsuit were made exclusively in Japan while Plaintiff was living and working in Japan.

Despite that his claims have no connection to the United States, let alone to the Southern District of New York, Plaintiff now seeks to sue IBM Japan in this Court for breach of contract under Japanese law and for violations of the Japanese Labor Standards Act.  (Am. Compl. p. 14.)[1]

Plaintiff's claims against IBM Japan must be dismissed: (1) pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) because this Court lacks personal jurisdiction over IBM Japan; (2) pursuant to FRCP 12(b)(6) because Plaintiff fails to meet the pleading standards described in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009); (3) on the basis of *forum non conveniens*; and (4) pursuant to FRCP 12(b)(4) and (5) because Plaintiff never properly served IBM Japan.

## II.     FACTUAL BACKGROUND

In or about February 2008, Plaintiff began working for a Japanese company, Cognos K.K. ("Cognos"), as a Financial Consultant.  (Am. Compl. ¶ 20.)  On or about February 25, 2008, Cognos and Plaintiff entered into an employment contract, which expired on July 11, 2008.  (*Id.* Exs. C & D.)  The contract allowed Cognos to terminate Plaintiff's employment on 30 days' written notice.  (*Id.* Ex. C.)

---

[1] Plaintiff also brings claims for national origin and age discrimination, and for common law tortious interference with contractual relations, but these claims are brought exclusively against other defendants, not IBM Japan.  (*See* Am. Compl. pp. 3, 20.)

In April 2008, IBM Japan acquired Cognos, and Plaintiff and other former Cognos employees began working for IBM Japan. (Am. Compl. Ex. C, p.7.) In a contract dated April 22, 2008, IBM Japan and Plaintiff agreed that Plaintiff would start working for IBM Japan and that the contract would expire—and Plaintiff's employment with IBM Japan would end—on January 31, 2009. (*See id.* ¶ 80; Ex. A to Affirmation of Allan S. Bloom, dated October 14, 2011 and filed herewith.[2])

In accordance with his contract, IBM Japan employed Plaintiff until January 31, 2009. (*See* Am. Compl. ¶ 80.) Throughout his employment with IBM Japan, Plaintiff worked exclusively in Japan. Nowhere in his Amended Complaint does Plaintiff allege that he ever worked for IBM Japan in the United States, or even traveled to the United States for a business trip. (*See generally* Am. Compl.) In fact, Plaintiff did not even move to the United States until December 20, 2010, long after he stopped working for IBM Japan. (*Id.* ¶ 96)

Plaintiff never worked for IBM's U.S.-based affiliate, defendant International Business Machines Corporation ("IBM US"). (*See generally* Am. Compl.)[3]

## III.    THE COURT LACKS PERSONAL JURISDICTION OVER IBM JAPAN

In order for Plaintiff to sue IBM Japan in this Court, this Court must have personal jurisdiction over IBM Japan. In determining whether personal jurisdiction exists, the Court must look to New York state law. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Plaintiff bears the burden of establishing that the Court has jurisdiction over IBM Japan. *Id.*

---

[2] Plaintiff refers to the document attached as Exhibit A in his Amended Complaint. (Am. Compl. ¶¶ 42-43.) Therefore, it is not a matter outside of the pleadings under the Federal Rules and may properly be considered with this motion. *See, e.g.*, *Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149 (S.D.N.Y. 2006).

Under New York law, personal jurisdiction can either be general under New York Civil Practice Law and Rules ("CPLR") section 301 ("CPLR 301") or specific under CPLR section 302 ("CPLR 302").  Neither jurisdictional basis exists in this case with respect to IBM Japan, and therefore the Court should dismiss Plaintiff's claims again IBM Japan in their entirety pursuant to FRCP 12(b)(2).

### A.     IBM Japan Is A Separate Entity

Nowhere in the Amended Complaint does Plaintiff allege that IBM Japan is one and the same entity as the U.S.-based International Business Machines Corporation ("IBM US") (or any other entity over which the Court ordinarily would have personal jurisdiction).  Indeed, Plaintiff claims that "IBM Japan is a separate stock company [from IBM US] with its own board."  (Am Compl. ¶ 9.)[4]

### B.     General Personal Jurisdiction Does Not Exist Over IBM Japan

CPLR 301 confers general personal jurisdiction on a district court if the defendant has "engage[d] in a continuous and systematic course of conduct in New York" such that it can be said to be "doing business" in New York.  *See Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990). (citations omitted), *cert. denied*, 498 U.S. 1028 (1991).  In determining whether a non-domiciliary has been "doing business" in New York, courts consider factors including (1) whether the corporation has an office in New York; (2) whether the corporation has solicited business in New York; (3) whether the corporation has bank accounts or property in New York;

---

(...continued)

[3] IBM US has filed a separate motion to dismiss Plaintiff's claims against it.

[4] Plaintiff also does not allege facts suggesting that IBM Japan shares with IBM US (or any other entity subject to the Court's jurisdiction) an (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.  *See* IBM US's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Claims Against It, dated October 14, 2011 and filed herewith, at Section III(B).

and (4) whether the corporation has employees in New York. *Id.* (citation omitted). "[C]onclusory non-fact-specific jurisdictional allegations [by the plaintiff] are insufficient to establish even a *prima facie* showing of personal jurisdiction under § 301." *Schenker v. Assicurazioni Generali S.P.A.*, No. 98-CV-9186 (MBM), 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002) (citations and quotations omitted).

Plaintiff's lengthy allegations fall far short of establishing that IBM Japan does business in New York (indeed, because IBM Japan does *not* do business in New York). Instead, Plaintiff merely alleges that personal jurisdiction over IBM Japan is conferred through CPLR 301 "under both 'mere department' and 'agency' doctrines of doing business in New York." (Am. Compl. p. 1.) To elaborate on that conclusory and vague allegation, Plaintiff subsequently alleges that IBM US does business in Japan through IBM Japan, and that IBM Japan is a wholly-owned subsidiary of IBM US. (*Id.* ¶¶1, 3-18.) Nowhere, however, does Plaintiff allege that IBM Japan has offices in New York, solicits *any* business in New York, owns any property in New York, or has any employees in New York. *See generally* Am. Compl; *see also Schenker*, 2002 WL 1560788, at *6 (noting that courts consider presence of employees in New York to be the most important factor in determining whether a company is "doing business" in New York). At most, Plaintiff alleges that IBM Japan does business in *Japan* that is somehow related to IBM US—*not* that IBM Japan does business in *New York* (through IBM US or otherwise).

Courts of this Circuit routinely dismiss cases for lack of personal jurisdiction on allegations similar to these. In *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 207 (E.D.N.Y. 2006), for example, the court held that general personal jurisdiction was lacking when "Plaintiff has not alleged that Defendant's solicitation [of business in New York] is 'substantial and continuous,' let alone that Defendant has engaged in any other activities of

-4-

substance in the state of New York." *See also Mareno*, 910 F.2d at 1046 (noting that the presence of a related corporate entity in New York does not provide sufficient contacts for a federal court in New York to exercise jurisdiction over a foreign corporation); *Schenker*, 2002 WL 1560788, at *5 (no personal jurisdiction even though defendant may have solicited business in New York, because solicitation was not specifically directed at activities in New York).

Plaintiff has failed to establish a *prima facie* case that IBM Japan has done business in New York.  Therefore, general personal jurisdiction over IBM Japan does not exist.

### C.      Specific Personal Jurisdiction Does Not Exist Over IBM Japan

Under New York's long-arm statute, the Court could only exercise jurisdiction over IBM Japan if IBM Japan (1) had transacted business within New York; (2) had engaged in tortious conduct within New York; (3) had engaged in tortious conduct outside of New York that causes injury within the state, provided that Plaintiff's claim arises from such conduct; or (4) owns property in New York.  CPLR 302(a).  None of these are applicable in this case, and Plaintiff does not allege that they are.[5]

#### 1.      *IBM Japan does not and has not transacted business within New York or contracted to supply goods or services in New York*

Under CPLR 302(a)(1), a court may exercise specific personal jurisdiction over a non-domiciliary if that party or its agent transacts business within the state or contracts to supply goods or services in the state.  To determine if CPLR 302(a)(1) is satisfied, courts analyze (1) whether the defendant "transacts any business" in New York, and, if so, (2) whether the cause of action arises from such a business transaction.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citation omitted).  Plaintiff does not allege that IBM Japan satisfies this test,

---

[5] Indeed, Plaintiff does not allege that jurisdiction exists under CPLR 302.

likely because he knows that IBM Japan operates entirely in Japan and transacts business exclusively in that country.  (*See* Am. Compl. p. 1.)  To the contrary, Plaintiff makes clear that IBM Japan "performs … tasks in Japan" (*id*. at p. 4, ¶ 10) and nowhere does Plaintiff suggest that he worked anywhere but in Japan.  (*See generally id*.)

### 2. *No tortious act within New York is at issue in this case*

CPLR 302(a)(2) grants specific personal jurisdiction over a non-domiciliary if a lawsuit involves a tortious act allegedly committed within New York.  Because all relevant actions occurred in Japan, personal jurisdiction does not exist under CPLR 302(a)(2).  (*See generally* Am. Compl.)  Plaintiff worked exclusively in Japan, and he does not allege that any actions relevant to his claims took place in the United States, let alone in New York.  (*See id*. ¶ 80.)

### 3. *No tortious act occurred outside of New York that caused injury in New York*

Under CPLR 302(a)(3), a court may exercise specific personal jurisdiction over a non-domiciliary if that party or its agent commits a tortious act outside of the state causing injury to a person or property within the state, but only if the defendant:  (1) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state (CPLR 302(a)(3)(i)); or (2) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce (CPLR 302(a)(3)(ii)).

A threshold issue is therefore where Plaintiff's alleged injury occurred—and the courts make clear that any injury to Plaintiff occurred in Japan.  In deciding where an injury occurs, New York courts apply a situs of injury test, whereby an injury is deemed to occur where the tort takes place (here, Japan).  *See Whitaker*, 261 F.3d at 209.  Significantly, courts have held

that termination from employment outside of the United States followed by the plaintiff moving

to New York is insufficient to establish a tortious act outside of New York causing injury in New

York.  *E.g.*, *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (for purposes of CPLR

302(a)(3), plaintiff who was resident of New York but worked exclusively in New Jersey was

not injured in New York when his employment was terminated; "Undoubtedly, the exercise of

personal jurisdiction must be based on a more direct injury within the state than the type of

indirect financial loss alleged by Mareno."), *cert. denied*, 498 U.S. 1028 (1991); *see also M&M*

*Packaging, Inc. v. Kole*, No. 04-CV-9532 (CLB), 2005 WL 6319489, at *2 (S.D.N.Y. July 27,

2005) ("[M]ere residence of a plaintiff in New York is insufficient to establish personal

jurisdiction over a non-domiciliary defendant under CPLR § 302(a)(3).  Similarly insufficient is

the fact that a plaintiff in New York may suffer the economic consequences of an event."), *aff'd*,

183 F. App'x. 112 (2d Cir. 2006).

### 4.      *IBM Japan does not own property in New York*

Under CPLR 302(a)(4), specific personal jurisdiction exists over a non-

domiciliary if that party owns, uses, or possesses real property in New York and the injury is

related to that property.  Plaintiff does not make any allegations suggesting that this is the case.

(*See generally* Am. Compl.)

### D.      Plaintiff's Theories Of Jurisdiction Also Fail

Notwithstanding the governing standards, described above, which he cannot

satisfy, Plaintiff asserts various "alternative" theories of personal jurisdiction, each of which has

no merit.

### 1.      *Plaintiff's "mere department" and "agency" theories fail*

Contrary to Plaintiff's allegation (Am. Compl. p. 1), "mere department" and

"agency" theories do not confer personal jurisdiction over IBM Japan under CPLR 301.

a.     Plaintiff's "mere department" theory is without merit

Plaintiff apparently believes that because of the parent-subsidiary relationship

between IBM US and IBM Japan, IBM Japan is a "mere department" of IBM US and so personal

jurisdiction exists under CPLR 301.  This is a misstatement of law.  A "mere department" exists

only when the parent exercised such complete control over the subsidiary that the two entities

were virtually indistinguishable from each other (much like one department of an entity is

virtually indistinguishable from another department of the same entity) – and not when, as here,

the two companies are separate entities.  For example, in *Volkswagenwerk Aktiengesell-Schaft v.*

*Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)—a case Plaintiff cites (Am. Compl. p.

1)—the Second Circuit explained that "the presence of a local corporation does not create

jurisdiction over a related, but independently managed, foreign corporation."  The

*Volkswagenwerk* court further explained that "[t]he officers of any corporation that owns the

stock of another ***necessarily exercise a considerable degree of control over the [local]***

***subsidiary corporation and the discharge of that supervision alone is not enough to subject the***

***[foreign] parent to New York jurisdiction***."  *Id.* (emphasis added).  For example, "[o]f course,

the officers of a parent normally control the board of directors of a subsidiary in their capacity as

representatives of the controlling shareholder."  *Id.* at 121.  It is only "when the activities of the

parent show a disregard for the separate corporate existence of the subsidiary" that "New York

jurisdiction may be asserted."  *Id.* at 120.  When making this determination, courts consider four

factors: (1) common ownership; (2) financial dependency of the subsidiary on the parent

corporation; (3) degree to which the parent selects and assigns the subsidiary's executive

personnel and fails to observe corporate formalities; and (4) parent's degree of control over the

marketing and operational policies of the subsidiary.  *Id.* at 120-22.  *See also Freeman v. Gordon*

*& Breach*, 398 F. Supp. 519, 521 (S.D.N.Y. 1975) ("[T]he activities must amount to more than

the mere parent-subsidiary relationship.").  Plaintiff's claims fall far short of establishing that

any of the four factors are met so as to justify personal jurisdiction over IBM Japan on the basis

of IBM US's presence in New York.

Other cases that Plaintiff cites in his Amended Complaint undermine his own

arguments regarding personal jurisdiction over IBM Japan.  In *Freeman*, for instance, the district

court concluded that a foreign subsidiary was subject to personal jurisdiction because the

subsidiary performed services in New York for the parent that were so significant that the parent

would have performed those services in New York itself if the subsidiary did not.  *See Freeman*,

398 F. Supp. at 521-22.  As a result, the court concluded that "although not 'physically' present

in New York, [the subsidiary] is doing business in this State."  *Id*. at 522.  The parent-subsidiary

relationship described in *Freeman* is the type necessary to create personal jurisdiction under the

"mere department" theory, but the facts of that case cannot be further from the facts of this case.

Plaintiff's own allegations make it clear that any services performed by IBM Japan were

performed *in Japan*.  (*See, e.g.*, Am. Compl. p. 4, ¶ 8 ("IBM Japan, Ltd., performs those tasks in

Japan that IBM USA would not be able to perform, or would have to perform itself, to sell its

services and products in Japan."); *id*. p. 5, ¶ 18 ("[D]ecisions made in Japan are in furtherance of

objectives set by IBM USA.").)  Plaintiff does not and cannot allege that IBM Japan performs

services *in New York* on behalf of IBM US that IBM US otherwise would have done itself *in

New York*.  (*See generally id*.)

(i)    Mere department "financial dependency" factor

The financial dependency necessary to satisfy the second prong of

*Volkswagenwerk* must go well beyond what Plaintiff alleges here.  In *Volkswagenwerk*, the

parent loaned $400,000 to the subsidiary without a set date for repayment, and the parent

allowed the subsidiary to amass $300,000 in accounts payable; combined, this $700,000 from the

parent company exceeded the subsidiary's own cash balances.  *Volkswagenwerk*, 751 F.2d at

121.  In total, the subsidiary owed the parent over $2,200,000, which exceeded the subsidiary's

net worth.  *Id.*

    Here, Plaintiff does not allege that IBM Japan is financially dependent on IBM

US; to the contrary, he states that "[i]t is not clear if IBM Japan is financially 'dependent' upon

any intermediate parent, or the parent company itself."  (Am. Compl. p. 4, ¶ 5.)   Plaintiff alleges

merely that "IBM USA loans money to the intermediate parents for the benefit of IBM Japan. . . .

IBM USA has loaned money to an intermediate subsidiary in order to reduce the Japanese tax

liability of IBM Japan, and therefore benefit IBM Japan."  (*Id.* p. 4, ¶ 5.)  Indeed, Plaintiff cannot

truthfully allege financial dependence—one of Plaintiff's own exhibits indicates that IBM

Japan's 2008 income "exceeded 100 billion yen."  (*Id.* Ex. M, p. 1.)  This falls far short of the

significant financial *dependency* described in *Volkswagenwerk* and necessary to establish

personal jurisdiction under the mere department theory.  In fact, courts have held that the

financial dependency factor is not satisfied when a parent has merely provided *some* financial

assistance to a subsidiary.  *See e.g.*, *Jerge v. Potter*, No. 99-CV-312 (FE), 2000 WL 1160459, at

*3 (W.D.N.Y. Aug. 11, 2000) (for CPLR 301 purposes, no financial dependency existed even

though parent provided subsidiary with some financial assistance).

    (ii)  Mere department "corporate formalities" factor

    Plaintiff alleges that "IBM USA officials authorize changes in the subsidiary's

executive personnel.  Decisions are made in 'global' committees, which are set up and controlled

by IBM USA," that there is some unspecified "common management," and that IBM Japan

management is "ultimately responsible to" the CEO of IBM US.  (Am. Compl. p. 4, ¶ 6, p. 5, ¶

12.)[6]  Such conclusory and vague allegations are insufficient to establish personal jurisdiction

over IBM Japan.

In *Volkswagenwerk*, the parent did not treat the subsidiary as an independent

entity.  Instead, the parent completely controlled who served as officers and board members of

the subsidiary, and the subsidiary failed to hold its own board of directors meetings.

*Volkswagenwerk*, 751 F.2d at 121-22.  Similarly, other courts have concluded that some parent

influence over a subsidiary is not sufficient to create personal jurisdiction over a foreign

subsidiary.  *E.g.*, *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (fact that

one of parent's managing executive directors was also chairman of subsidiary was insufficient to

establish that subsidiary was mere department); *Jerge,* 2000 WL 1160459, at *3 ("Having

common directors and officers is a normal business practice of a multinational corporation and

absent complete control there is no justification to labeling a subsidiary a mere department of the

parent."; "[W]hile [the parent company] may have some influence over decisions made by [its

subsidiary], plaintiff has not show that this control rises to such a degree as would suggest that

the latter is a 'mere department' of the former.") (citations and quotations omitted).

(iii)    Mere department "control over marketing and operational
policies" factor

Finally, with respect to the degree of control over marketing and operational

policies of the subsidiary by the parent, Plaintiff's allegations again fall far short of what is

required to establish personal jurisdiction.  In *Volkswagenwerk*, the parent completely controlled

the marketing of its subsidiary.  *See Volkswagenwerk*, 751 F.2d at 122.  Plaintiff does not allege

that degree of control here.  To the contrary, Plaintiff makes the conclusory allegation that "IBM

---

[6] Although Plaintiff also includes an attachment which he says supports this point, it is unclear
why Plaintiff thinks so.

USA controls the marketing and operating policies of IBM Japan, Ltd., directly, and through intermediate affiliates.  There are standardized marking and operational policies *to the extent possible*, as part of a … 'globally integrated enterprise' policy.  Some products and services are localized *in the Japanese market*, as part of a global business strategy."  (Am. Compl. p. 4, ¶ 7 (emphasis added).)  Plaintiff also alleged that "IBM purports to be a fully-integrated company" and notes that the CEO of IBM US "refers to it as a 'globally integrated company' in various annual reports."  *Id.* p. 5, ¶ 17.  Such generalized and conclusory allegations are insufficient to establish that IBM Japan is a "mere department" of IBM US.  In fact, even Plaintiff acknowledges the limitations on IBM US's supposed control, noting that the control only exists to the extent possible.  *Id.*  Such claims are insufficient to establish personal jurisdiction over IBM Japan.  *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (statements in foreign parent's annual report that it had "pervasive control and domination" over New York subsidiary was insufficient to establish personal jurisdiction over parent; also insufficient were statements by parent's present that company "needs to become a truly global company" and "I want each part of our global operations … to focus on contributing to the company as a whole"; "None of this material, and especially not a request for world-wide cooperation, shows the pervasive control over the subsidiary that the 'mere department' standard requires."); s*ee Jerge*, 2000 WL 1160459, at *3 (no personal jurisdiction even though parent's website listed subsidiary as operating unit or division of parent and stated that parent company provided management support for its subsidiaries).

        b.      <u>Plaintiff's "agency" theory is without merit</u>

       Plaintiff's agency theory also fails.  "To make a prima facie case that a New York company does business in New York as the 'agent' of a foreign company, plaintiffs must allege that the New York company/companies … do all the business in New York that the foreign

company … could do were it here through its own officials."  *Schenker*, 2002 WL 1560788, at

*6.  As explained by the Second Circuit in *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95

(2d Cir. 2000), *cert. denied*, 532 U.S. 941 (2001)—also cited by Plaintiff—"[t]he agent must be

primarily employed by the defendant and not engaged in similar services for other clients."  In

*Wiwa*, the "agent" devoted virtually all of its time to the defendant's business.  *Id.*  Further,

"plaintiffs must demonstrate the defendant's continuous and systematic general business

contacts" in New York.  *Id.* at 98 (citations and quotations omitted).  Determination of whether a

"continuous and systematic" presence in New York exists is based on "whether the company has

an office in the state, whether it has any bank accounts or other property in the state, whether it

has a phone listing in the state, whether it does public relations work there, and whether it has

individuals permanently located in the state to promote its interests."  *Id.*  Here, *none* of those

factors are even alleged.  (*See generally* Am. Compl.)  Instead, Plaintiff merely alleges that

"[t]he localization of IBM services and products is consistent with an agency relationship.  The

subsidiary, IBM Japan, Ltd., performs those tasks *in Japan* that IBM USA would not be able to

perform, or would have to perform itself, to sell its services and products *in Japan*."  (*Id.* p. 4, ¶

8) (emphasis added).  This is not sufficient to create personal jurisdiction over IBM Japan.

> ### 2.      *The Alien Venue Act does not confer jurisdiction over IBM Japan*

In suggesting that the Alien Venue Statute, 28 U.S.C. § 1391(d), confers

jurisdiction over IBM Japan (Am. Compl. p. 1), Plaintiff confuses venue with jurisdiction.  As its

name suggests, the Alien Venue Statute determines which venue (*i.e.*, which federal district

court) a plaintiff can bring certain claims once a separate basis of jurisdiction exists; the statute

does not does not confer personal jurisdiction over a defendant.  *See* 28 U.S.C. § 1391(d) (2010);

28 U.S.C.A. § 1391 cmt. (West 2010) ("If a district appears to satisfy some venue standard with

respect to one or a few defendants, there is no magic in § 1391 that will obtain jurisdiction that

does not otherwise exist."); *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 864 (2d Cir. 1997) (stating that venue provisions in 28 U.S.C. § 1391 "do not confer or deny jurisdiction; they assume that the court in question has subject matter jurisdiction, and they simply limit the locations in which the action may be brought"); *La Chance v. Drug Enforcement Admin.*, 672 F. Supp. 76, 79 (E.D.N.Y. 1987) ("Plaintiff's attempted reliance on 28 U.S.C. § 1391 for jurisdictional purposes is … misplaced, as this statute concerns only the separate and distinct issue of venue for civil actions that are properly brought in Federal District Court and has no bearing on the threshold question of whether the court has jurisdiction.").

Because it governs venue, and does not grant jurisdiction, Plaintiff's theory that 28 U.S.C. § 1391(d) confers personal jurisdiction over IBM Japan fails.

### 3. Plaintiff's "supplemental jurisdiction" theory fails because supplemental jurisdiction can only confer subject matter jurisdiction, not personal jurisdiction over a party

In the pre-motion conference before the Court, Plaintiff argued that the Court has supplemental jurisdiction over his claims against IBM Japan. Plaintiff, however, conflates supplemental jurisdiction and personal jurisdiction. Supplemental jurisdiction potentially provides a district court with subject matter jurisdiction, but the court must still have personal jurisdiction over the defendant in order to hear the case. *E.g.*, *Doppelt v. Perini Corp.*, No. 01-4398 (LMM), 2002 WL 392289, at *4 (S.D.N.Y. Mar. 13, 2002) ("[S]upplemental jurisdiction … is a *subject matter jurisdiction* device which enables a plaintiff to join pendent *claims* in a federal proceeding.") (emphasis in original), *aff'd*, 53 F. App'x. 174 (2d Cir. 2002); *Baptichon v. Nevada State Bank*, 304 F. Supp. 2d 451, 457 n. 13 (E.D.N.Y. 2004) ("Plaintiff … confuses supplemental jurisdiction, which may be used to meet the requirements of subject matter jurisdiction, with personal jurisdiction, which must be independently established as to each defendant. The existence of supplemental jurisdiction over plaintiff's claims thus does not aid

plaintiff in demonstrating personal jurisdiction over NSB.") (citations omitted), *aff'd*, 125 F. App'x. 374 (2d Cir. 2005).

Personal jurisdiction must be established, therefore, regardless of whether supplemental jurisdiction (or any form of subject matter jurisdiction) exists.  Supplemental jurisdiction, were it to exist, does not provide this Court with personal jurisdiction over Plaintiff's claims against IBM Japan.[7]

### 4. *FRCP 4(k)(2) does not confer jurisdiction over IBM Japan*

FRCP 4(k)(2) confers personal jurisdiction on a federal district court *only* if "(1) *the plaintiff's cause of action arises under federal law*; (2) the defendant is not subject to the jurisdiction of any one state; and (3) sufficient contacts with the United States exist such that the exercise of personal jurisdiction over defendant is consistent with the requirement of due process."  *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010) (emphasis added); *see also Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008) (same).  FRCP 4(k)(2) does not grant personal jurisdiction over IBM Japan because two jurisdictional requirements are not met.  First, Plaintiff's causes of action against IBM Japan do not arise under federal law.  Second, IBM Japan has not maintained sufficient contacts with the United States as a whole to justify an exercise of jurisdiction.

---

[7] Further, IBM US is also moving to dismiss the claims against it.  If the Court grants that motion, the appropriate conclusion is for the court to also decline to exercise supplemental subject matter jurisdiction over Plaintiff's claims against IBM Japan, all of which are state law claims, even if the Court did have personal jurisdiction over IBM Japan.  *See, e.g.*, *Kendrick v. Greenburgh Housing Auth.*, No. 07-CV-5859 (CS), 2011 WL 1118664, at *12 (S.D.N.Y. Mar. 22, 2011) (Seibel, J.) (declining to exercise supplemental jurisdiction over plaintiff's state law claims after dismissing plaintiff's federal claims; "The traditional values of judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.") (citations and quotations omitted).

      a.    <u>Plaintiff's claims against IBM Japan do not arise under federal law</u>

Plaintiff asserts no federal claims against IBM Japan.  Therefore, Plaintiff does not satisfy the first jurisdictional requirement of FRCP 4(k)(2).  *Tamam*, 677 F. Supp. 2d at 731. Plaintiff's Count One contains the only claim brought in this action under U.S. federal law (Title VII and the ADEA), but Plaintiff expressly brings those claims only against IBM US.  (Am. Compl. p. 3.)  Count Two, the only count Plaintiff brings against IBM Japan, alleges breach of contract and the Japanese Labor Standards Act.  (*See id*. p. 14.)  Count Three is for common law tortious interference (clearly not a federal claim) and is not brought against IBM Japan.  (*Id*. p. 20.)  Because the Plaintiff's allegations against IBM Japan are based exclusively upon Japanese law, Plaintiff's theory that FRCP 4(k)(2) confers jurisdiction over IBM Japan automatically fails.

Because Plaintiff's claims do not arise under federal law and because, as discussed in Section E below, the exercise of jurisdiction in this case fails to comply with due process, FRCP 4(k)(2) does not confer personal jurisdiction over IBM Japan.[8]

**E.    Exercise Of Personal Jurisdiction In This Case Would Offend Due Process**

Even if Plaintiff could meet the requirements of CPLR 301 or 302 or FRCP 4(k)(2) described above, this Court still would not have personal jurisdiction over IBM Japan because the exercise of personal jurisdiction would not "comport[] with the requisites of due process."  *See Whitaker*, 261 F.3d at 208 (CPLR 302); *Porina*, 521 F.3d at 127 (FRCP 4(k)(2)).

---

[8] The cases Plaintiff's cites in the Amended Complaint do not change this result.  In *Action Embroidery Corp. v. Atlantic Emroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004), the Ninth Circuit held that a California federal district court could properly hear state law claims against a Virginia defendant *but only because the plaintiff also brought federal claims against that same defendant*.  In *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993), *cert. denied*, 513 U.S. 822 (1994), personal jurisdiction existed over the defendants because the plaintiff brought suit under a federal statute that provided for national service of process, unlike the statutes at issue here.

Due process requires "that the defendants have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" so that it could reasonably anticipate being sued here. *Best Van Lines*, 490 F.3d at 242 (citations and quotations omitted). "A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test. The crucial question is whether the defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citations and quotations omitted).

The due process analysis involves two inquiries. *Id.* First, IBM Japan must have had substantial minimum contacts with the forum (the United States for purposes of FRCP 4(k)(2) and New York for purposes of CPLR 301 and 302) so as to justify the Court's exercise of jurisdiction. *Porina,* 521 F.3d at 127. Second, if the first step of the analysis is satisfied, the exercise of jurisdiction must be reasonable under the circumstances. *Id.* This analysis makes clear that this Court cannot exercise of personal jurisdiction over IBM Japan.

## 1. *IBM Japan does not maintain sufficient contacts with New York or the United States*

First, IBM Japan did not and does not maintain sufficient contacts with New York or the United States as a whole to justify the exercise of personal jurisdiction. While Plaintiff alleges that IBM US exerts influence over IBM Japan (in a way that is typical of a parent with respect to a subsidiary), Plaintiff's allegations fall far short of suggesting that IBM Japan had sufficient contacts with New York or the United States. For example, Plaintiff claims that "[Virginia] Rometty [of IBM World Trade Corporation] maintains an office in New York to perform work involving IBM Japan. IBM Japan's management travels to New York, or contacts

New York by other means, to conduct business regularly with Ms. Rometty." (Am. Compl. p. 5,

¶ 14.) These conclusory allegations of a tenuous connection to New York are insufficient to

meet the first prong of the due process analysis. *See, e.g.*, *BBC Chartering and Logistics,*

*GmbH*, No. 08 Civ. 200 (WHP), 2009 WL 259618, at *5-6 (S.D.N.Y. Feb. 4, 2009) (holding that

attending meetings in New York, along with other activities in New York such as marketing

goods in New York, was insufficient to meet the due process test for personal jurisdiction).

### 2. *Exercise of jurisdiction is not reasonable in this case*

Second, personal jurisdiction over IBM Japan is also unavailable under the second

step of the due process analysis, the reasonableness inquiry. In determining whether an exercise

of jurisdiction is reasonable, courts consider "(1) the burden that the exercise of jurisdiction will

impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the

plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's

interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest

of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco*

*Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996). "The weaker

plaintiff's showing of minimum contacts, the more emphasis the court should place on the

reasonableness inquiry." *Taman*, 677 F. Supp. 2d at 731.

The exercise of jurisdiction in this case would be unreasonable. Litigating in the

United States will impose a substantial burden on IBM Japan; all relevant evidence and

witnesses are in Japan, so the expense involved in litigating the case in New York would be

significant. Additionally, should Plaintiff obtain a judgment against IBM Japan in this Court, he

would have to return to Japan to enforce it. Further, because Plaintiff's claims against IBM

Japan involve questions of Japanese law, Japan has an interest in resolving the matter—not New

York or the United States.

IV.     **THE AMENDED COMPLAINT FAILS TO MEET THE PLEADING STANDARDS OF *TWOMBLY* AND *IQBAL***

Even if personal jurisdiction did exist over IBM Japan, the Complaint should be dismissed on the independent ground that it fails to meet the pleading standards as described by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S ---, 129 S. Ct. 1937, 1949 (2009).

A.     ***Twombly* And *Iqbal* Standard**

*Twombly* and *Iqbal* require the Court to ignore any allegations that are based solely on opinions or legal conclusions.  *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Although the law "does not require 'detailed factual allegations,' . . .  it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  The Complaint contains nothing more than bare recitations of the law, with no facts alleged that could support a finding of liability on the part of IBM Japan.

B.     **Plaintiff's Breach Of Contract Claim Is Not Plausible On Its Face**

Plaintiff's alleges the following with respect to his contract(s) with Cognos:  (1) Plaintiff's original contract with Cognos was void for vagueness (Am. Compl. p. 15, "Assertion One" and ¶¶ a, 14-17); (2) that void contract ended when another employee's employment with Cognos ended (*id.* pp. 15-16, "Assertion Two" and ¶¶ b, 18-23); (3) Plaintiff's original contract with Cognos is void because at the time of execution Cognos did not have the capacity to contract (*id.* pp. 16-17, "Assertion Three" and ¶¶ c, 24-33); (4) Plaintiff's contract with Cognos is "a sham" because Cognos never compensated Plaintiff for overtime (*id.* p. 17, "Assertion Four" and ¶¶ d, 34-35); (5) as an alternative to (1) through (4), Plaintiff's original contract with Cognos became one for a regular employment relationship (apparently meaning non-term) after

July 11, 2008, and "[t]here is no fact to show that plaintiff's employment relation to Cognos

K.K. did not continue after July 11th, 2008." (*id.* pp. 17-18, "Assertion Five" and ¶¶ e, 36-41).

Putting aside that Plaintiff has not alleged the elements of a breach of contract

claim, Plaintiff's allegations regarding his contract with Cognos cannot be brought against *IBM*

*Japan*.  We are aware of no law that would permit Plaintiff to sue IBM Japan for an alleged

breach by another party (Cognos) of a contract that IBM Japan was not (and is not alleged to

have been) a party to.

With respect to his IBM Japan contract, Plaintiff claims that: (1) the contract was

obtained by abuse of power and therefore is invalid (*id.* pp. 18-19, "Assertion One" and ¶¶ a,

42-51); (2) the invalid IBM Japan contract did not supersede the original Cognos contract (which

Plaintiff claims is also invalid), and both the invalid IBM Japan contract and the invalid original

Cognos contract both continued to exist (*id.* pp. 19, "Assertion Two" and ¶¶ b, 52-56); (3) the

invalid IBM Japan contract is a "sham" because Plaintiff was never paid for overtime (*id.* pp. 19-

20, "Assertion Three" and ¶¶ c, 57-60).

Such allegations are insufficient to plead a breach of contract claim.  First,

Plaintiff apparently does not believe any contract even existed.  Second, he does not plead that a

contract was actually breached (let alone provide any details to support a finding of breach).

Third, it is unclear if Plaintiff's breach of contract claim is under New York or Japanese law.  As

a result, the Amended Complaint blatantly fails to comply with the pleading requirements of

*Twombly* and *Iqbal.*

**C.**      **Plaintiff's Japanese Labor Law Claim Is Not Plausible On Its Face**

Plaintiff's claims of violations of the Japanese Labor Standards Law similarly fail

to state a claim.  Plaintiff merely alleges a series of legal conclusions, which is insufficient under

*Twombly* and *Iqbal*.  (Am. Compl. p. 20, ¶¶ 61-66.)

**V.      THE COMPLAINT SHOULD BE DISMISSED ON THE GROUND OF *FORUM NON CONVENIENS***

Even if the Court had personal jurisdiction over IBM Japan and even if Plaintiff sufficiently pled his claims, the Amended Complaint should be dismissed on the additional ground of *forum non conveniens*.

"The doctrine of *forum non conveniens* permits a court to resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute, if dismissal would best serve the convenience of the parties and the ends of justice." *Murray v. BBC*, 81 F.3d 287, 290 (2d Cir. 1996) (citations and quotations omitted). To dismiss a case on *forum non conveniens* grounds, a court must first identify an alternate forum in which the plaintiff may bring his claims. *Id.* If an alternative forum exists, the court must then balance public and private interests to determine if dismissal is appropriate. *Id.* at 293. Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having controversies decided at home; the interest in having the trial in a forum that is familiar with the law governing the action; the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (citation omitted). Private interest factors include "the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; and all other practical problems that make trial of a case easy, expeditious, and inexpensive – or the opposite. Issues concerning the enforceability of a judgment should also be considered." *Id.* at 294 (citation omitted).

In this case, both the private and public interest factors overwhelmingly support dismissal on *forum non conveniens* grounds. All relevant evidence and witnesses are in Japan (including Plaintiff's former supervisor, who never worked for IBM US, is not under IBM US's

control, and who could not be compelled by any party to come to the United States to serve as a witness in this suit). Because all of the allegations in this case concern events that allegedly took place in Japan, the expense involved in litigating this case in New York will be unnecessarily significant. *Id.* Additionally, should Plaintiff obtain a judgment in this Court, he would have to return to Japan to enforce it as against IBM Japan and the other Japanese defendants. Further, this case will involve questions of Japanese law, and therefore Japan—not New York or the United States—has a superior interest in resolving this matter. Further, Japan provides a forum for these claims (including the Prefectural Labor Bureau, the Perfectural Labor Committee, and the court system in Japan), and Plaintiff should pursue his claims there. Even Plaintiff admits that Japan provides a forum for his claims. (Am. Compl. ¶ 95.)

The Second Circuit has made clear that a case should be dismissed on *forum non conveniens* grounds in circumstances like those here. For example, in *Carey v. Bayerische Hypo-Und Vereinsbank, AG*, 370 F.3d 234 (2d Cir. 2004), the Second Circuit affirmed dismissal of a suit brought against a German company even though the plaintiff was a New York resident at the time she filed suit in the Southern District of New York. The Second Circuit emphasized the plaintiff voluntarily entered into the contract at issue while she was living in Germany, and therefore it was reasonable to require her to litigate in Germany. *Id.* at 238. The court also stressed that a number of the witnesses were in Germany and were not employees of the defendant, and so "likely would not be available for a United States proceeding." *Id. See also Murray*, 81 F.3d 287 (affirming dismissal of plaintiff's complaint against foreign corporation and its wholly owned American subsidiary on the grounds of forum non conveniens because an alternative forum was available and events at issue took place exclusively outside of the United States).

-22-

This case has no relation whatsoever to the United States, let alone to this district. The Court should dismiss the action on that ground alone, and compel Plaintiff to litigate, if anywhere, in Japan.

## VI.   IBM JAPAN HAS NOT BEEN PROPERLY SERVED UNDER THE HAGUE CONVENTION

Plaintiff's claims must also be dismissed on the independent ground that Plaintiff never properly served IBM Japan, and therefore in addition to the reasons discussed in Section III above, this Court does not have personal jurisdiction over IBM Japan. *See Casio Computer Co. v. Sayo*, 98 Civ. 3772 (WK) (RLE), 1999 U.S. Dist. LEXIS 14675, at *85 (S.D.N.Y. Sept. 20, 1999), *adopted by*, 2000 U.S. Dist. LEXIS 15411, at *28 (S.D.N.Y. Oct. 13, 2000) ("A federal court cannot exercise personal jurisdiction over defendants who are improperly served …. [V]alid service of process is a prerequisite to the court's exercise of personal jurisdiction.") (citing *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103 (1987)).  Although IBM Japan is making this motion in a good faith effort to resolve this matter (rather than ignoring Plaintiff's improperly served complaint), dismissal is appropriate under FRCP 12(b)(4) and (5).

Plaintiff bears the burden of establishing the validity of service.  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).  FRCP 4(f) governs service of process upon defendants in a foreign country.  Because the U.S. and Japan are both parties to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), Plaintiff must serve IBM Japan, located in Japan, in accordance with the Hague Convention.  *See Casio*, 1999 U.S. Dist. LEXIS 14675, at *86; *see also* Fed. R. Civ. P. 4(f)(1).

The Hague Convention requires plaintiffs to serve a copy of the summons and complaint by certain approved means.  *Casio*, 1999 U.S. Dist. LEXIS 14675, at *85.  Plaintiff served his summons and complaint on IBM Japan via registered mail (*see* Proofs of Service filed

by Plaintiff with the Court), which is *not* an approved means of service of process in Japan under the Hague Convention.  *See Casio*, 1999 U.S. Dist. LEXIS 14675, at *89 ("Japan … does not permit service of process by mail."); *Fitzgibbon v. Sanyo Sec. Am., Inc.*, 92-CV-2818 (RPP), 1994 U.S. Dist. LEXIS 8386, at *28 (S.D.N.Y. June 22, 1994) ("[T]he court finds that the Hague Convention does not authorize service of process by mail upon a citizen in Japan."); *Charas v. Sand Tech. Sys. Int'l Inc.*, No. 90-5638 (JFK), 1992 WL 296406, at *2 (S.D.N.Y. Oct. 7, 1992) (holding that service of defendant in Japan by mail is not permitted).[9]   For this independent reason, Plaintiff has not properly served IBM Japan, and the claims against IBM Japan must therefore be dismissed.

## VII.    CONCLUSION

This Court does not have personal jurisdiction over IBM Japan, a Japanese company that does no business in the United States and that employed Plaintiff exclusively in Japan.  Even if he had properly served process on IBM Japan (which he did not), the mere existence of a corporate relationship between IBM Japan and IBM US is insufficient to allow Plaintiff to sue IBM Japan—for alleged violations of Japanese law—in this district.

---

[9] The U.S. Department of State also instructs plaintiffs to serve defendants in Japan through the Japanese central authority, and not the mail.  *See* http://travel.state.gov/law/judicial/judicial_678.html#service, last visited Oct. 14, 2011 (instructing plaintiffs to serve defendants in Japan through the Japanese Central Authority); http://travel.state.gov/law/judicial/judicial_680.html#treatyobligation, last visited Oct. 14, 2011 (listing Japan among the countries in which service by registered mail was not acceptable under the Hague Convention).

For the reasons set forth herein, the Court should dismiss Plaintiff's claims against IBM Japan in their entirety with prejudice.

Dated: New York, New York
        October 14, 2011

                              Respectfully submitted,

                              PAUL HASTINGS LLP


                              By:        /s/ Allan S. Bloom_____
                                   Allan S. Bloom
                                   Erin E. LaRuffa

                              75 East 55th Street
                              New York, New York 10022
                              (212) 318-6000
                              allanbloom@paulhastings.com
                              erinlaruffa@paulhastings.com

                              *Attorneys for Defendant*
                              IBM JAPAN, LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FREDERICK W. GUNDLACH,

               Plaintiff,

        - against -

INTERNATIONAL BUSINESS MACHINES INC.,
IBM JAPAN LTD, COGNOS K.K., and JOHN DOE(S),

               Defendants.

No. 11 CV 0846 (CS) (PED)

**<u>CERTIFICATE OF SERVICE</u>**

---

       I hereby certify that on October 14, 2011, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Further, a copy of the foregoing was served by UPS overnight delivery on:

**Frederick W. Gundlach**
143 Hawthorne Drive
Denver Borough, PA 17517

                    /s/ Erin E. LaRuffa
                     Erin E. LaRuffa

LEGAL_US_E # 95240015.1