UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
FREDERICK GUNDLACH,

                                           Plaintiff,

                - against -                                              **OPINION AND ORDER**

                                                                        No. 11-CV-846 (CS)
IBM JAPAN, LTD., COGNOS K.K., KUNIYA TSUBOTA,
and JOHN DOES or JANE DOES,

                                           Defendants.
------------------------------------------------------------------------x

Appearances:
Frederick W. Gundlach
Denver Borough, Pennsylvania
Pro Se *Plaintiff*

Allan S. Bloom
Erin E. LaRuffa
Paul Hastings LLP
New York, New York
*Counsel for Defendants*

Seibel, J.

        Before the Court is the Motion to Dismiss of Defendants IBM Japan, Ltd. ("IBM Japan")

and Kuniya Tsubota (collectively, "Defendants").  (Doc. 75.)  IBM Japan seeks dismissal of

Plaintiff's Japanese Labor Law claims under Federal Rule of Civil Procedure 12(b)(2) for lack of

personal jurisdiction, or in the alternative, under Rule 12(b)(6) for failure to state a claim.[1]  Mr.

Tsubota seeks dismissal of Plaintiff's state-law tortious interference claim under Rule 12(b)(6)

and on the ground that he was improperly added as a Defendant under Rule 15(a)(2) and this

Court's prior Order.  For the following reasons, Defendants' Motion is GRANTED.

---

[1] Cognos K.K. ("Cognos") is also a named Defendant in this action.  Cognos, however, was acquired by IBM Japan,
(*see* Second Amended Complaint ("SAC"), (Doc. 57), at 2 ("Defendants"), ¶ 25; Memorandum of Law of
Defendants IBM Japan, Ltd. and Kuniya Tsubota in Support of Their Motion to Dismiss Plaintiff's Second
Amended Complaint, ("Ds' Mem."), (Doc. 79), at 2), and has never appeared in this action.

## I. __Background__

All of Plaintiff's factual allegations are accepted as true for purposes of Rule 12(b)(6) and construed in the light most favorable to Plaintiff.

In February 2008, Plaintiff commenced employment as a financial consultant in Japan with Cognos, a Japanese company.  (SAC ¶ 26.)  Plaintiff signed an employment contract, dated February 25, 2008, which laid out the conditions of his employment and included, among other things, the following terms:  (1) Plaintiff's job would begin on February 25, 2008 and end on July 11, 2008, with the possibility of renewal if both parties consented; (2) Plaintiff would perform accounting work as a financial consultant; (3) Plaintiff would be based in Tokyo, Japan; and (4) Cognos could terminate Plaintiff at any time with thirty days' advance notice.  (*Id.* Ex. C, at 1-3.)  Plaintiff asserts that this contract contained a number of "irregularities" and "flaws" such that the contract was "invalid," (*id.* ¶ 29), and that ultimately Cognos did not honor it, (*id.* ¶ 35).

On March 7, 2008, Plaintiff took over the role of Financial Controller.  (*Id.* ¶ 37.) Plaintiff alleges that this new position did not come with a written contract, (*id.* ¶ 38); rather, terms were deleted from Plaintiff's February 25, 2008 contract, (*id*).  Specifically, the provision concerning the limited duration of employment was crossed out, making the contract into one for "regular" or permanent employment under Japanese law.  (*Id.*, *id.* Ex. C, at 1.)  The deletions are accompanied by a round stamp, which functions as the seal of the corporation.  (*Id.* ¶¶ 40-41.) Plaintiff affixed the seal himself, but alleges that Steve Gazzard, a Cognos manager in Australia, authorized the modifications.  (*Id.* ¶ 41.)  Plaintiff contends that these contractual changes converted him from a term-limited employee to a *sei sha'in*, or permanent, employee.  (*Id.* ¶ 38.)

In early 2008 IBM Japan acquired Cognos, and all Cognos employees were transferred to IBM Japan effective May 1, 2008.  (*See id.* ¶¶ 25, 45.)  IBM Japan and John Doe(s) allegedly insisted that Plaintiff not be transferred.  (*Id.* ¶ 47.)  Plaintiff contends that these same John Doe(s) "interfered" with his employment relationship with Cognos by saying that Cognos could no longer pay Plaintiff and that to continue to be paid he would have to accept a contract with IBM Japan.  (*Id.* ¶¶ 48-50.)  Plaintiff signed the IBM Japan contract – which was term-limited – on April 22, 2008.  (*Id.*¶¶ 55-56.)

In October 2008, Plaintiff notified the Human Resources ("HR") department at both IBM Japan and International Business Machines Corporation ("IBM US") of his concerns regarding the new contractual provisions.  (SAC ¶ 66.)  Specifically, Plaintiff e-mailed Mr. Tsubota, who Plaintiff alleges was responsible for employment modifications at IBM Japan, (*id.* ¶ 82), and who "did nothing to insure that plaintiff's employment would continue within Cognos and successor corporation IBM Japan," (*id.* ¶ 85).  Plaintiff's employment with IBM Japan terminated on January 31, 2009, although he contends that his "permanent" employment with Cognos still exists under Japanese law.  (*Id.* ¶ 72.)

Plaintiff commenced this lawsuit on February 7, 2011 by filing a Complaint, (Doc. 1), which he amended for the first time on July 29, 2011, (Doc. 28).  On May 1, 2012, I dismissed all claims against IBM US, but permitted the parties to engage in jurisdictional discovery to determine whether personal jurisdiction could be asserted over IBM Japan (the "May 1 Order").  (Doc. 53.)  Plaintiff filed his SAC on May 23, 2012, naming Mr. Tsubota as a Defendant for the first time.  (Doc. 57.)  Defendants subsequently submitted this Motion to Dismiss.  (Doc. 75.)

## II. Legal Standards

### A. *Personal Jurisdiction*

At the motion to dismiss stage, the plaintiff generally must make a *prima facie* showing

by his pleadings and affidavits that the court has jurisdiction over each of the defendants. *See*

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986) (at evidentiary hearing or

trial, plaintiff must demonstrate personal jurisdiction by preponderance of the evidence). A

federal court sitting in diversity looks to the law of the state in which it sits to ascertain whether

it may exercise personal jurisdiction over a foreign defendant. *See Bank Brussels Lambert v.*

*Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). In such cases, the court must

first determine if the forum's law would confer jurisdiction through its long-arm statute and then

decide if the exercise of such jurisdiction is permissible under the Due Process Clause of the

Fourteenth Amendment. *Id.*

### B. *Motion to Dismiss*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

4

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

"While *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, [courts] read them with 'special solicitude' and interpret them 'to raise the strongest arguments that they *suggest*.'" *Roman v. Donelli*, 347 F. App'x 662, 663 (2d Cir. 2009) (summary order) (emphasis in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). Where the plaintiff is an attorney, however, as Plaintiff is here, he or she is not entitled to the same liberality afforded other *pro se* plaintiffs. *See Cohen v. Cnty. of Nassau*, No. 10-CV-5836, 2011 WL 2604345, at *1 n.1 (E.D.N.Y. June 29, 2011) ("Given that plaintiff is an attorney, his pleadings are not entitled to the degree of liberality ordinarily given to *pro se* plaintiffs."); *Fenner v. City of N.Y.*, No. 08-CV-2355, 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("Although *pro se* litigants are generally entitled to a broad reading of their submissions because of their lack of familiarity with the law, that is not the case with attorneys who have chosen to proceed *pro se*. It is well settled in the Second Circuit that since

the reason for affording *pro se* litigants special deference is not present when the litigant is an

attorney, no special consideration is required.") (internal citation omitted).

## III.   Discussion

### A.   *Personal Jurisdiction over IBM Japan*

Under New York law, a foreign corporation is subject to general personal jurisdiction in

New York if it is "doing business" in the state. *See* N.Y. C.P.L.R. § 301.  To meet that standard,

a plaintiff must demonstrate that a defendant engaged in "continuous, permanent, and substantial

activity in New York." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d

1039, 1043 (2d Cir. 1990).[2]

In particular circumstances, however, the "continuous, permanent, and substantial

activity in New York" does not need to be conducted by the foreign corporation itself.  For

example, under the theory of jurisdiction on which Plaintiff relies,[3] if the local entity's control of

the foreign entity "extends far beyond mere ownership," a New York court may assert

---

[2] Plaintiff seems to argue that IBM Japan is doing business in New York because "IBM Japan has [previously] been a plaintiff in [the] Southern District."  Plaintiff's Memorandum of Law in Opposition to Defendants IBM Japan's and Kuniya Tsubota's Motion to Dismiss ("P's Opp."), (Doc. 81), at 6 n.7.)  He cites *Recyclers Consulting Group, Inc. v. IBM Japan Ltd.*, No. 96-CV-2137, 1997 WL 615014 (S.D.N.Y. Oct. 3, 1997), as an example of IBM Japan availing itself of the forum court.  (*Id.*)  *Recyclers Consulting* is inapposite.  In that case, IBM Japan was the defendant, and removed the case to federal court in New York pursuant to a forum selection clause. *Recyclers*, 1997 WL 615014, at *1.  Plaintiff cites another case in which IBM Japan was a plaintiff – *IBM Japan, Ltd. v. Nippon Cargo et al.*, 93-CV-5574 – which was voluntarily dismissed three months after it was filed.  (No. 93-CV-5574, Doc. 3.)  That IBM Japan brought one lawsuit in New York twenty years ago (or even another four years later) hardly shows "continuous, permanent, and substantial" activity here at the time Plaintiff commenced this lawsuit, and is thus insufficient to establish personal jurisdiction.

[3] In his SAC, Plaintiff contends that this Court has personal jurisdiction over IBM Japan under both the "agency" and "mere department" theories of jurisdiction.  Plaintiff has not argued for agency jurisdiction in his motion papers, nor has he addressed Defendants' argument that my May 1 Order – which found that "Plaintiff's construction of agency jurisdiction is insufficient to establish personal jurisdiction over IBM Japan," (Doc. 53 at 18) – precluded Plaintiff from asserting jurisdiction under an agency theory.  Accordingly, Plaintiff has abandoned any claim that the Court has jurisdiction over IBM Japan under an agency theory, and only Plaintiff's arguments concerning the "mere department" theory will be addressed herein. *Cf. Kamanou v. Exec. Sec'y of Comm'n of Econ. Cmty. of W. African States*, No. 10-CV-7286, 2012 WL 868700, at *3 (S.D.N.Y. Mar. 14, 2012) (plaintiff faces obligation, in response to defendant's motion to dismiss, to "present arguments as to each of her causes of action.  Plaintiff's failure to do so constitutes abandonment of those claims").

jurisdiction over the foreign corporation as a "mere department" of the local corporation.

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984);

*see Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (Where a plaintiff alleges that a

"foreign corporation is present in New York state because of the activities there of its subsidiary,

the presence of the subsidiary alone does not establish the parent's presence in the state. For

New York courts to have personal jurisdiction in that situation, the subsidiary must be either an

'agent' or a 'mere department' of the foreign parent.") (internal citation omitted).[4]

In deciding whether a foreign entity is a "mere department" of a New York corporation,

courts look to four factors: (1) "common ownership," (2) "financial dependency of the

subsidiary on the parent corporation," (3) "the degree to which the parent corporation interferes

in the selection and assignment of the subsidiary's executive personnel and fails to observe

corporate formalities," and (4) "the degree of control over the marketing and operational policies

of the subsidiary exercised by the parent." *Volkswagenwerk*, 751 F.2d at 120-22 (citing *Taca

Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 101 (1965)).[5]

The first factor is "essential," *id.* at 120, and the parties do not dispute that it is met.[6]

Nevertheless, "the presence of a local corporation does not [automatically] create jurisdiction

---

[4] As I stated in my May 1 Order, Plaintiff argues the reverse of the situation described in *Jazini*, attempting to show that Defendant IBM Japan is subject to jurisdiction here because it is a mere department or agent of its New York-based parent corporation. Courts have, under certain circumstances, found this reverse jurisdictional theory plausible. *See, e.g.*, *Sayles v. Pac. Eng'g & Constructors, Ltd. (PECL)*, No. 08-CV-676, 2010 WL 5334272, at *5 (W.D.N.Y. Dec. 20, 2010) (jurisdictional discovery issue related to whether foreign defendants were mere departments of parent corporations with contacts in New York); *Freeman v. Gordon & Breach, Sci. Publishers, Inc.*, 398 F. Supp. 519, 521-22 (S.D.N.Y. 1975) (subsidiary subject to personal jurisdiction in New York because while "not 'physically' present in New York," it was "doing business in this State" due to relationship with parent).

[5] Plaintiff cites *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d. Cir. 2000), as "the case which would most influence the analysis of [the *Volkswagenwerk*] factors." (P's Opp. 6.) *Wiwa*, however does not address the "mere department" doctrine but instead analyzes jurisdiction under agency theory, *id.* at 95, and is therefore irrelevant to the inquiry at bar.

[6] IBM US does not own IBM Japan directly, but owns 100% of intermediary companies that in turn own 100% of IBM Japan. (*See* SAC Ex. F, at 2.) Thus, for the purposes of this analysis, common ownership is established. *See*

over a related, but independently managed, foreign corporation." *Id.*  The other factors comprise

a balancing test, *see Advance Coating Tech., Inc. v. LEP Chem. Ltd.*, 142 F.R.D. 91, 95

(S.D.N.Y. 1992), that, applied here, weighs against exercising jurisdiction over IBM Japan.

    1.  Financial Dependence

Plaintiff contends that although it is "not clear" if IBM Japan is financially dependent

upon IBM US, IBM US does "loan[] money to the intermedia[ry] parents for the benefit of IBM

Japan."  (SAC ¶ 5; *see* P's Opp. 3.)  In support of his contention, Plaintiff submits a treatise

discussing two recapitalizations of IBM Japan, allegedly accomplished by IBM US, occurring

sometime between 1937 and 1950.[7]  (P's Mem. 5, *id.* Ex. D.)  The relevant time period for

jurisdictional inquiry under CPLR § 301, however, is the time of service of the summons and

complaint, *see Andros Compania Maritima S.A. v. Intertanker Ltd.*, 714 F. Supp. 669, 675

(S.D.N.Y. 1989); *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa,*

428 F. Supp. 1237, 1246 n.12 (S.D.N.Y. 1977), so these ancient and apparently isolated

transactions are not relevant.[8]

---

*Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06-CV-13157, 2006 WL 3735657, at *1-2, *13 (S.D.N.Y. Dec. 15, 2006).

[7] The statements in the treatise are hearsay – Plaintiff has not authenticated it as a learned treatise under Federal Rule of Evidence 803(18) – and "hearsay evidence submitted by plaintiff is not sufficient to defeat a motion to dismiss for lack of personal jurisdiction."  *Park W. Galleries, Inc. v. Franks*, No. 12-CV-3007, 2012 WL 2367040, at *7 (S.D.N.Y. June 20, 2012) (internal quotation marks omitted).

[8] Plaintiff also submits a newsletter concerning a tax avoidance transaction entered into among IBM US, IBM Asia Pacific Holdings, and IBM Japan.  (P's Opp. 3; *id.* Ex. J (Doc. 82).)  First, the newsletter is hearsay.  Further, I previously ruled that minor beneficial transactions, such as the tax avoidance transaction noted by Plaintiff, do not suffice to demonstrate dependence.  (Doc. 53 at 21 (citing *Reers v. Deutsche Bahn AG,* 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004) (financial dependency showing lacking where plaintiffs alleged facts indicating "some measure of control over the broad financial policies of its subsidiaries," but "have not clearly alleged dependency"); *Jerge v. Potter,* No. 99-CV-0312, 2000 WL 1160459, at *3 (W.D.N.Y. Aug. 11, 2000) ("Examples of situations in which financial dependency has been found are no-interest loans, control of finances of subsidiary by parent and financing of inventory by parent.") (footnotes omitted)).)  That companies engage in a mutually beneficial transaction hardly shows that one of them is dependent on the other.

Defendant, on the other hand, has submitted an affidavit from Masaki Sakaue, the HR

Manager in Employment & Labor Relations for IBM Japan, (Sakaue Decl. ¶ 1),[9] which states

that IBM Japan is financially independent from IBM US.  Sakaue testifies that IBM Japan is

financially solvent and does not rely on IBM US or any other company for financial support.

(*Id.* ¶ 4.)  Sakaue further states that IBM Japan purchases and finances its own inventory, (*id.* ¶¶

12-13), and earns significant annual profits from its own sales in Japan, (*id.* ¶ 5).  Moreover,

IBM Japan maintains its own bank accounts, (*id.* ¶ 8), and, when in need of credit, IBM Japan

borrows from Japanese banks without having the loans guaranteed by IBM US, (*id.* ¶¶ 9-10).

Finally, according to Sakaue, IBM US does not make no-interest or below-market interest loans

to IBM Japan.  (*Id.* ¶ 11.)  Plaintiff has not presented any evidence to the contrary.  As such,

factor two weighs against exercising jurisdiction over IBM Japan.

2.  Management and Corporate Formalities

Plaintiff asserts that IBM US and IBM Japan have "common management."  (SAC ¶¶ 12-

17.)  Specifically, he alleges that Virginia Rometty, Chairman and Chief Executive Officer

("CEO") of IBM US, (*id.* ¶ 12), "was treated as someone who had authority over at least some of

the operations of IBM Japan, if not all the operations of IBM Japan," (*id.* ¶ 14), and that IBM

Japan's management is ultimately responsible to Ms. Rometty, albeit through other managers,

(*id.* ¶ 12).  Defendants contend that IBM Japan has its own officers and executives separate and

apart from IBM US, (Sakaue Decl. ¶ 21, *see id.* Ex. B), and that the two entities do not share any

---

[9] "Sakaue Decl." refers to the Declaration of Masaki Sakaue.  (Doc. 77.)  On a motion to dismiss, parties may submit affidavits to resolve jurisdictional disputes.  *See S. New England Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (district court adjudicating motion to dismiss for lack of personal jurisdiction may rely on pleadings and affidavits or conduct evidentiary hearing); *Hunter v. Deutsche Lufthansa AG*, No. 09-CV-3166, 2012 WL 1059417, at *4 (E.D.N.Y. Mar. 28, 2012) (in deciding motion to dismiss for lack of personal jurisdiction, court may make determination on basis of affidavits); *Freeman*, 398 F. Supp. at 520 ("With regard to motions addressed to personal jurisdiction, it is proper for the Court to rely on affidavits to establish jurisdictional facts.") (internal quotation marks omitted).

of the same officers, (*id.* ¶ 22).  Sakaue further testifies that IBM Japan's Board of Directors

reviews and approves the appointments of all officers and senior executives, even those on

assignment to IBM Japan from other entities.  (*Id.* ¶ 24.)

Plaintiff adduces no evidence to support his conclusory allegation that IBM US and IBM

Japan have "common management."  Even if Plaintiff is correct that Rometty has authority over

IBM Japan's operations, one overlapping executive (especially one like Rometty, who is at the

highest level and unlikely to participate in any day-to-day operational or personnel decisions) is

insufficient to support the exercise of jurisdiction over IBM Japan.  *See Gallelli v. Crown*

*Imports, LLC*, 701 F. Supp. 2d 263, 273 (E.D.N.Y. 2010) ("[S]ome overlapping executive

personnel" insufficient for finding of "mere department"; "common directors and officers is [*sic*]

a normal business practice of a multinational corporation and absent complete control there is no

justification to labeling a subsidiary a mere department of the parent"); *In re Ski Train Fire in*

*Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 403, 412 (S.D.N.Y. 2002) ("It has been

established that overlapping officers and directors are intrinsic to the parent-subsidiary

relationship, and that they are not determinative as to whether the subsidiary is a mere

department of the parent.") (internal quotation marks omitted).

Plaintiff also makes much of the fact that employees from IBM entities worldwide are

seconded to IBM Japan.  (P's Opp. 3-4.)  That several employees are "on assignment" from IBM

US to IBM Japan (and vice-versa) is supported by interrogatories and is not disputed by IBM

Japan.  (Ds' Mem. 11; Bloom Aff., Ex. B, at 3-7.) [10]  The fact that a multinational corporation

occasionally seconds its employees to other offices, however, is insufficient to support the

exercise of jurisdiction over a foreign subsidiary.  *See Morse Typewriter Co. v. Samanda Office*

---

[10] "Bloom Aff." refers to the Affirmation of Allan S. Bloom.  (Doc. 76.)

*Commc'ns Ltd.*, 629 F. Supp. 1150, 1153 (S.D.N.Y. 1986) (finding transfers of employees

between subsidiary and parent not sufficient for finding of mere department).

Finally, there is no dispute that IBM Japan maintains corporate formalities.  Plaintiff does

not contest this issue.  Defendants have submitted evidence that IBM Japan maintains its own

board of directors.  (Sakaue Decl. ¶ 15, *id.* Ex. B.)  These directors hold regular meetings at

which minutes are taken, (*id.* ¶ 17, *id.* Ex. C), and decisions regarding IBM Japan are discussed

and voted on, (*id.* ¶¶ 16-17, *id.* Ex. C).  IBM Japan maintains its own corporate records, general

ledger, and corporate governance policies.  (*Id.* ¶ 19.)  The maintenance of these corporate

formalities weighs against the exercise of jurisdiction.  *See Linde v. Arab Bank, PLC*, 262 F.R.D.

136, 143 (E.D.N.Y. 2009) (observation of corporate formalities weighs against exercising

jurisdiction); *In re Ski Train Fire*, 230 F. Supp. 2d at 410-11 (same).

3.   Marketing and Operational Control

Plaintiff also alleges that IBM US controls IBM Japan's marketing and operational

policies, "directly, and through the intermediate affiliates."  (SAC ¶ 7.)  In support of this

contention, Plaintiff asserts that IBM US and IBM Japan have a "globally integrated enterprise

policy."  (*Id.*; P's Opp. 5.)  His evidence consists of various statements to this effect:  a public

statement by the head of operations for IBM Japan, (P's Opp. 5), statements in IBM US's annual

reports, (SAC Ex. U), and the IBM US CEO's discussion of multiculturalism, (*id.* Ex. H).  In

response, Defendants submit an affidavit declaring that IBM Japan controls its own operations,

(Sakaue Decl. ¶ 26), sets its own prices, develops its own strategy for marketing, and sells

through its own distribution network, (*id.* ¶ 36).  According to Defendant (and Plaintiff has

presented no contrary evidence), IBM Japan uses IBM US's products and services only as a

starting point, modifies them for the Japanese market, and develops client-specific solutions

implemented solely by IBM Japan staff without oversight by IBM US.  (*Id.* ¶¶ 35-37.)

The statements Plaintiff submits are not sufficient to warrant the exercise of jurisdiction.

Besides the fact that some of these statements are inadmissible hearsay, "[s]tatements of global

cooperation among a parent and its subsidiaries do not support a finding of the pervasive control

necessary to support a mere department holding."  *Gallelli*, 701 F. Supp. 2d at 274; *see Jazini*,

148 F.3d at 185 ("None of this material [statements in annual reports], and especially not a

request for world-wide cooperation, shows the pervasive control over the subsidiary that the

'mere department' standard requires."); *J.L.B. Equities*, 131 F. Supp. 2d at 550 ("[T]he Court is

not persuaded that a failure to distinguish between parent and subsidiary on a web page is

sufficient to show that the parent controls the subsidiary's marketing and operational policies.").

*          *          *

Considering all the factors, I find substantial evidence that IBM US does not exercise

sufficient control or domination over IBM Japan for the latter to be considered a "mere

department" of the former.  Plaintiff thus has not carried his burden to establish personal

jurisdiction over IBM Japan.

Accordingly, I need not reach whether asserting jurisdiction over IBM Japan would

comport with Due Process – although it seems clear that it would not, for the reasons stated by

Defendant, (Ds' Mem. 15-17) – nor do I need to address the sufficiency of the allegations against

IBM Japan.

**B.  *Tortious Interference***

Plaintiff did not name Mr. Tsubota as a Defendant until he filed his SAC on May 23,

2013.  (SAC ¶ 81-87.)  Defendants argue that Mr. Tsubota was improperly added because my

12

May 1 Order only gave Plaintiff leave to amend his claims against IBM Japan.  (Ds' Mem. 20

(citing Doc. 53 at 27).)  Plaintiff responds that the May 1 Order only prohibited Plaintiff from

amending his claims against IBM US, but was silent as to his claims against "John Doe," and

thus his amendment was permitted.[11]  (P's Opp. 13.)

Under Federal Rule of Civil Procedure 15, after the initial period for amendment

expires, a party may only amend its pleading "with the opposing party's written consent or the

court's leave."  Fed. R. Civ. P. 15(a)(1), (2).  In my May 1 Order, I granted Plaintiff leave to

"amend his [First Amended Complaint] as to IBM Japan" and advised him that "he may wish to

clarify exactly what breaches [of contract] he is alleging, as well as the theory of his Labor Law

claim."  (Doc. 53 at 27.)  I did not, however, grant Plaintiff leave to amend his tortious

interference claim or add Mr. Tsubota as a Defendant.  Further, in my June 8, 2012 Order, I

concluded that Plaintiff could not have intended to substitute Mr. Tsubota as a newly identified

defendant previously known to him only as "John Doe," as Plaintiff has known Mr. Tsubota's

identity since 2008.  (Doc. 59.)  Accordingly, even if my specifying the areas in which

amendment was permitted in the May 1 Order could reasonably be interpreted as permitting

other amendments – which it cannot – adding Mr. Tsubota as a Defendant was improper.

In any event, Plaintiff fails to state a claim for tortious interference with contractual

relations.  Under New York law, tortious interference with contractual relations requires that the

plaintiff plead "(1) the existence of a valid contract between the plaintiff and a third party; (2) the

defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-

---

[11] Plaintiff also argues that Mr. Tsubota was properly added because *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), held that relation back under Federal Rule of Civil Procedure 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or timeliness in seeking to amend the pleading, and Mr. Tsubota should have known that he was one of the "John Does" named in Plaintiff's original Complaint. (P's Opp. 12 (citing *Krupski*, 560 U.S. at 2498).)  While Defendant argues that the limitations period expired before Mr. Tsubota was added in May 2013, the antecedent question, which I address here, is whether Plaintiff had leave to amend his claim for tortious interference at all.

party's breach of the contract without justification; (4) actual breach of the contract; and (5)

damages." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal quotation

marks omitted).

Plaintiff has specifically alleged that his contract with Cognos was not valid.  (*See* SAC

¶ 29 (Plaintiff's contract with Cognos contained several "irregularities and flaws . . . such that

[it] is not valid").)  Failure to allege a valid contract by itself warrants dismissal.  *See Brady v.*

*Calyon Sec. (USA)*, 406 F. Supp. 2d 307, 314 (S.D.N.Y. 2005) (dismissing claim where plaintiff

failed to allege existence of contract between him and third party); *Martin Ice Cream Co. v.*

*Chipwich, Inc.*, 554 F. Supp. 933, 945 (S.D.N.Y. 1983) (same).[12]  Further, Plaintiff fails to allege

Mr. Tsubota intentionally interfered with Cognos's performance of the contract.  Plaintiff merely

alleges that Mr. Tsubota "did nothing" to ensure that Plaintiff's employment would continue

with Cognos, (SAC ¶ 85), but there are no facts suggesting that Mr. Tsubota took any action

whatsoever to induce Cognos to breach its contract with Plaintiff.  As such, Plaintiff fails to

plausibly allege a claim for tortious interference with contractual relations.  *See Boehner v.*

*Heise*, 734 F. Supp. 2d 389, 404 (S.D.N.Y. 2010) ("Plaintiffs must show Defendants' direct

interference with a contract.  That is, Defendants must have directed some activities toward the

customers whose contracts are alleged to have been breached.") (collecting cases); *Fonar Corp.*

*v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 481 (S.D.N.Y. 1997) ("[I]n order to

establish a claim under the tort of interference with contractual relations, a third party must

breach the contract *after being induced to do so by the defendant*.") (emphasis added).

---

[12] Plaintiff alleges that under Japanese law, an employer-employee relationship is considered contractual even if
there is no contract. (Ps' Opp. 8.)  Even if this counterintuitive proposition is true as a matter of Japanese law, there
is no reason to believe that *New York* law – under which this claim arises – would recognize the existence of a
contract in these circumstances.

Accordingly, Plaintiff's claim for tortious interference against Mr. Tsubota is dismissed.[13]

## IV.   Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED.  The Clerk of Court is directed to terminate this Motion, (Doc. 75), and close the case.

**SO ORDERED.**

Dated:  November 21, 2013
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[13] I decline to *sua sponte* grant leave to amend this claim, both because it is, as described earlier, procedurally defective as well as substantively insufficient, and because there is in any event, after two prior amendments, no indication that Plaintiff is in possession of facts that could cure the deficiencies described in this Opinion.  *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F> Supp. 2d 222, 242 (S.D.N.Y. 2005).